602 So.2d 201 (1992)
Dennis SCOTT, Plaintiff-Appellee,
v.
CENTRAL INDUSTRIES, INC., et al., Defendant-Appellant.
No. 91-74.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
*202 Allen, Gooch, Frank Flynn, Lafayette, for Cent. Industries, Inc.
Edwards, Stefanski, J. Michael Stefanski, Crowley, for Scott.
Before LABORDE and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
KNOLL, Judge.
This is a worker's compensation case. Defendant, Central Industries, Inc., (Central) appeals the trial court's finding that plaintiff, Dennis Scott (Scott), is temporarily totally disabled from a December 10, 1987, accident and awarding $113.00 per week in worker's compensation benefits and $7,500 in penalties and attorney's fees.

FACTS
Scott, 27 years of age, began working for Central as a "boardman" (laying and removing board roads at oil well sites) and truck driver for Central two months before his job related accident. Central hired Scott on an as-needed basis at $4.25 per hour.
On December 10, 1987, while loading boards at a muddy site, Scott slipped and fell onto the corner of a stack of boards. According to Scott, the corner of the stack of boards jabbed him in his back and shoulder area. Scott stopped working that day and reported the accident to his supervisor.
The following day, Scott saw Dr. F.J. Derouen, Jr., a general practitioner, for his complaints of pain. Dr. Derouen treated Scott conservatively for approximately 6 weeks and then referred him to Dr. Douglas McKay, an orthopaedist. Because of pain and tenderness in the left shoulder and lower back, a moderate degree of muscle spasm, a positive straight leg raising test and numbness in the foot, Dr. McKay suspected a disc injury and ordered a CT scan. Because the CT scan revealed a bulging disc at L5-S1, Dr. McKay performed a discogram and a percutaneous diskectomy. Initially, Scott reported diminished back and leg pain and eagerly returned to light duty work. However, Scott's back and leg pain returned and Dr. McKay referred him to Dr. J. Robert Rivet, a neurosurgeon.
On the August 15, 1988, visit, Dr. Rivet found bilateral muscle spasm of the lower back, a positive straight leg raising test *203 and recommended several diagnostic tests. The MRI showed a disc bulge at L4-5 and the myelogram and CT scan showed a ventral bulge (near the undersurface of the disc) also at L4-5.
A second opinion by Dr. James Domingue, a neurologist, confirmed the L4-5 bulge and recommended a L4-5 diskectomy and, possibly, a vertebral fusion.
Following a refusal to pay for the vertebral fusion, Central sent Scott to Dr. Clifton Shephard, an orthopaedist, in September and November of 1988 and also to Dr. Thomas Flynn, a neurosurgeon, in September of 1989. Dr. Shephard found all three tests (MRI, CT scan and myelogram) within normal limits and characterized the slight disc bulge at L4-5 as normal for Scott's age. Dr. Shephard opined that Scott greatly exaggerated his malady and found no objective evidence to support his subjective complaints of pain. Dr. Shephard "gave Scott the benefit of the doubt" and recommended rehabilitation therapy for only three weeks.
Dr. Flynn also characterized the three diagnostic tests results as within normal limits despite admitting the presence of the L4-5 disc bulge and found that Scott had exaggerated behavior during the physical examination. He found no objective evidence of any disc pathology and opined that Scott was able to return to work.
At trial, Central stipulated that worker's compensation benefits of $71 per week were paid to Scott from December 18, 1987, until November 10, 1988, and that medical expenses totaling $17,113.68 were paid.
Central appeals the award of worker's compensation benefits and penalties and attorney's fees.

TEMPORARY TOTAL DISABILITY
In claiming a total disability, whether temporary or permanent, the plaintiff must prove his inability to engage in any gainful occupation, whether or not the same or similar to that customarily engaged in at the time of injury. LSA-R.S. 23:1221(1). The plaintiff may rely on medical and lay testimony. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). Once the trial court has made factual findings as to disability and the length thereof, those determinations are entitled to great weight and are not to be disturbed except upon a showing of manifest error. Tassin v. Cigna Ins. Co., 583 So.2d 1222, 1225 (La.App. 3rd Cir.1991).
In the case sub judice, Scott testified that he has suffered from pain in the lower back, hips and legs and occasional numbness in his legs since the accident. He has difficulty with even the slightest lifting and is able to remain seated only for about one hour before the back pain worsens and the leg numbness begins.
Both Dr. Rivet and Dr. Domingue diagnosed the L4-5 disc bulge as pathological and symptomatic and recommended corrective surgery. Even Dr. Shepherd and Dr. Flynn admitted the presence of the L4-5 disc bulge, but both opined that Scott could return to work.
In its reasons for judgment, the trial court was critical of the opinions of both Dr. Shepherd and Dr. Flynn:

"Dr. Shephard (Orthopedist)
First saw plaintiff on September 21, 1988, at the request of Emile Joseph. He reported, `I found a very slight bulge at L-4-5'. After being very critical, and negative in his examination instead of truly finding out if this man was hurt or not, he sent the man home for two or three weeks of therapy and had him come back November 9th, 1988. He felt the man could return to work and needed no further medical treatment. This doctor's deposition sounds, as pointed out above, that the doctor was simply trying to take a position and work from it, rather than give the individual a fair examination. His official diagnosis was, `back pain with an undetermined etiology'.
Dr. Flynn (Neurological Surgeon)
He saw the plaintiff on September 5, 1989. He thought the plaintiff was not disabled and was capable of working. *204 He admitted a disc bulge at L-4-5, but attached no significance to same."
In light of the contradictory medical evidence adduced at trial and the credibility determinations made by the trial court, we cannot say that the finding of temporary total disability is manifestly erroneous.

CALCULATION OF BENEFITS
Central alleges that the trial court erred in its computation of Scott's worker's compensation benefits. Central contends that the record evidence shows that Scott is entitled to worker's compensation benefits only as a part-time employee. This change in status from a full-time employee as found by the trial court to a part-time employee would result in a diminution of worker's compensation benefits from $113 per week to $71 per week.
LSA-R.S. 23:1221(1) provides that an injured worker is entitled to worker's compensation benefits equaled to 66 2/3% of his wages during the period of temporary total disability. Wages are defined as the average weekly wage at the time of the accident. LSA-R.S. 23:1021(10).
In computing the average weekly wage, the following rules apply:
"(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or
(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury." LSA-R.S. 23:1021(10).
For purposes of subsection (iii), a part-time employee is one "who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position." LSA-R.S. 23:1021(9).
From the record evidence, it is clear that Scott neither accepted employment with Central for anything less than full-time status nor was ever classified by Central as a part-time employee. In his employment application, Scott checked "Fulltime" next to the question "Are you available to work?" and testified at trial that he understood he would be working forty hours per week or more when available.
Wendell Guillory, the personnel and risk manager for Central, testified that checking "Full Time" on the employment application means that the employee is available for work at a moment's notice. Guillory's testimony reveals that Central considered Scott a part-time employee but required him to be available for work upon a telephone call's notice and even discourages side employment.
The dialogue follows:
"Q. Now, when you hired Mr. Scott, he was hired as I understand it on an `as needed basis', is that correct?
A. That's correct.
Q. But you had him check off full-time employment. That is correct?
A. No Sir, I didn't have him do it, he did it on his own.
Q. All right, he did it on his own.
A. He did it on his own.
Q. He would have to be available when you call him in other words?
A. Right.
Q. He is sort of like on-call?
A. No he has to be available for work.
Q. In other words, if you don't want him having another job, he has got to be available to go to work when you need the man.
A. Yes.

*205 Q. If that's the idea, in other words, when you wanted this manwhen you accepted him as an employee, you didn't want him having a part-time job where he couldn't go to work for ya'll when you needed to put him to work. Is that not correct?
A. As long as it didn't interfere with my work."
An employer is in the best position to establish from the beginning an employee's status. Such an intention can easily be manifested in an employment agreement wherein the employee is apprised of his part-time status and the consequences of accepting employment under those circumstances. Any measure short of informing the employee of his part-time status does not satisfy the notice requirement of LSA-R.S. 23:1021(9).
Therefore, the trial court did not err in awarding Scott worker's compensation benefits in the amount of $113 per week.

PENALTIES AND ATTORNEY'S FEES
It is well settled that a worker's compensation claimant is not entitled to penalties and attorney's fees unless the withholding or termination of benefits is found to be arbitrary, capricious or without probable cause. Guidry v. United Furniture Dist., 544 So.2d 100 (La.App. 3rd Cir. 1989). If the employer has a bona fide dispute as to whether the claimant is no longer disabled, penalties and attorney's fees will not be awarded. Brown v. Manville Forest Products Corp., 565 So.2d 496 (La.App. 2nd Cir.1990), writ denied, 567 So.2d 1127 (La.1990). The trial judge's determination that an award of penalties and attorney's fees is warranted is based on a finding of fact and his decision will not be disturbed absent manifest error. Savant v. Employers Nat. Ins. Co., 502 So.2d 176 (La.App. 3rd Cir.1987).
In the case sub judice, we cannot say that the trial court was clearly wrong in awarding penalties and attorney's fees. Central terminated Scott's benefits on November 10, 1988, after Dr. Shepherd opined that Scott needed no further medical treatment and was fit to return to work even though he acknowledged that Scott had a bulging disc at L4-5 and officially diagnosed his condition as "back pain with an undetermined etiology."
Central's reliance on this medical testimony alone for its discontinuance of Scott's worker's compensation benefits is arbitrary and capricious since the medical evidence from his treating physicians clearly establish that Scott was still temporarily totally disabled when benefits were terminated.

ANSWER TO APPEAL
In brief, Scott requests that this court award an additional amount of attorney's fees for additional work necessitated by this appeal.
However, LSA-C.C.P. Art. 2133 and the jurisprudence are clear that an appellate court cannot award any additional amount where the appellee fails to answer the appeal. Breshers v. DOTD, State of La., 536 So.2d 733 (La.App. 3rd Cir.1988), writs denied, 541 So.2d 854, 856 (1989).
We have thoroughly searched the appellate record and find no answer to Central's appeal. Therefore, we must refuse Scott's request for additional attorney's fees.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant, Central Industries, Inc.
AFFIRMED.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.