626 So.2d 74 (1993)
Leon MILES, Plaintiff-Appellant,
v.
F.D. SHAY CONTRACTOR, INC. & CNA, Defendants-Appellees.
No. 93-64.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
*76 Louis D. Bufkin, Lake Charles, for Leon Miles.
Michael Jesse McNulty, III, Lake Charles, for F.D. Shay Contractor Inc. & CNA.
Before YELVERTON, KNOLL and THIBODEAUX, JJ.
THIBODEAUX, Judge.
This is an action for workers' compensation benefits. The claimant, Leon Miles, appeals an adverse judgment rendered against him by the administrative hearing officer regarding the propriety of terminating weekly benefits and the failure to award penalties and attorney's fees for the alleged arbitrary and capricious behavior of the employer's insurer, CNA.
The administrative hearing officer concluded that Miles was continuously temporarily totally disabled from the date of the accident, August 8, 1989, to the date of trial, November 18, 1991. The benefits were terminated from December 22, 1990 to October 27, 1991 for Miles's alleged failure to cooperate with his physician's recommended treatment.
For the following reasons, we reverse the decision of the administrative hearing officer and award temporary total disability benefits to claimant for the period from December 22, 1990 to October 27, 1991. Furthermore, we also award statutory penalties on these wrongfully withheld benefits and award attorney's fees in the sum of $5,000.00.

FACTS
During the summer of 1989, Mr. Miles was employed by F.D. Shay Contractor as a laborer. His crew was responsible for laying sewer pipe in a ditch. On two occasions while Mr. Miles worked in the ditch, objects fell on top of his head. On the first occasion, a co-worker dropped a segment of pipe on top of his head and knocked his head back. As a result of this accident, on August 8, 1989, Miles saw Dr. C.M. Smith. Dr. Smith gave him medication for the pain and possible infection. The second accident occurred about two weeks later when, while working in a ditch, a "clog" of dirt the size of a basketball, dislodged from the bank of the ditch, hitting him on the top of his head and causing him to feel dizzy. Miles claimed in his deposition that the pain he experienced later on that night was so intense that he could not sleep lying down.
Mr. Miles began receiving weekly workers' compensation benefits on August 12, 1989. The weekly benefits continued through the termination date of December 22, 1990. In addition to the indemnity benefits paid, CNA also paid a total of $14,041.47 in medical expenses on behalf of Mr. Miles.
Eventually, Mr. Miles saw Dr. Gerald Litel, a neurosurgeon, who performed a complete decompressive laminectomy at levels C4-5, C5-6 and C6-7 with bilateral foraminotomies at C4-5. Dr. Litel also performed decompressing spinal cord and multiple nerve roots surgical procedures on February 13, 1990.
After his accident, Mr. Miles was charged with the rape of his step-daughter. In April of 1990, he was incarcerated in the Calcasieu Parish jail. While incarcerated, Mr. Miles continued to see Dr. Litel for his complaints. On August 7, 1990, Dr. Litel issued a report to CNA recommending that Mr. Miles undergo a myelogram followed by an enhanced CT scan. His report advised CNA that he would be able to make a decision regarding Mr. Miles's present health status only after those tests were performed. Following receipt of Dr. Litel's report, CNA authorized Dr. Litel to perform the myelogram and the enhanced CT scan. Thereafter, in 1990, after Mr. Miles's initial incarceration in the Calcasieu Parish jail, he was transferred to the Avoyelles Parish jail.
Not only did Mr. Miles fail to undergo the medical tests recommended by Dr. Litel and authorized by CNA, but he also failed to return to see Dr. Litel. A CNA representative *77 contacted Mr. Miles's attorney on November 13, 1990, to inquire about Mr. Miles's condition as well as his reason for not undergoing the recommended tests. Susan Baggett who handled Mr. Miles's file for CNA, testified that she was advised by counsel for Mr. Miles, that they would get Mr. Miles in to see Dr. Litel as soon as possible. Ms. Baggett further testified that on December 20, 1990, CNA received a report from Dr. Litel stating that he had not seen Mr. Miles since August 6, 1990, and that he did not know whether or not he had gone through with the testing. Dr. Litel assumed, in his latest report as testified by Ms. Baggett, that Mr. Miles was still in the local city jail. Furthermore, Ms. Baggett testified that Dr. Litel's report indicated that the doctor felt that Mr. Miles's previous operation was definitive, but he could not determine whether Mr. Miles's significant complaints were new or old complaints and he was not aware of Mr. Miles's present status.
Mr. Miles continued to be treated by various doctors for numerous complaints during his incarceration. Until Mr. Miles's deposition of November 11, 1991, Ms. Baggett and CNA did not know that Mr. Miles had been transferred to Avoyelles. Based on its lack of knowledge as to Mr. Miles's condition and Mr. Miles's failure to undergo the recommended tests, Mr. Miles's workers' compensation benefits were terminated by CNA on December 22, 1990.

ISSUES
The issues before us are whether the claimant's benefits were properly terminated on December 22, 1990. If not, was CNA, the insurer, arbitrary and capricious or without probable cause for terminating claimant's benefits, thereby subjecting itself to penalties and attorney's fees?

DISCUSSION

A. Back Due Benefits
Mr. Miles argues that the hearing officer, while acknowledging that LSA-R.S. 23:1201.4 (pertaining to suspension of benefits while a claimant is incarcerated) did not apply in this case, nevertheless, "hung his hat" on Mr. Miles's release date as the time for CNA to resume payment of his workers' compensation benefits.
CNA, on the other hand, argues first that since Mr. Miles failed to submit to the diagnostic tests recommended by his treating physician and which it authorized, the hearing officer was correct in finding that benefits were properly terminated by CNA. In connection with its first argument, CNA claims an inability on its part to determine Mr. Miles's medical condition and disability due to his failure to cooperate with Dr. Litel's request. Secondly, CNA contends that although LSA-R.S. 23:1201.4 was not in effect until January 1, 1990, it nonetheless applies to the claimant since he became incarcerated after the effective date of the statute's amendment. We disagree.
The Louisiana Supreme Court stated clearly in Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992) that the governing law in a workers' compensation action is that which was in effect at the time of the alleged injury. See also, Behmke v. K-Mart Corp., 581 So.2d 291 (La.App. 5th Cir.1991). Thus, Mr. Miles's incarceration could not be a valid reason for discontinuing his benefits in the present case.
The hearing officer found that Mr. Miles was temporarily totally disabled as a result of his injury occurring within the course and scope of his employment with Shay on August 12, 1989, and that his disability commenced on that date and continued through the date of trial. Further, the hearing officer agreed with Mr. Miles that LSA-R.S. 23:1201.4 was inapplicable to the present case since Mr. Miles's injury occurred before its effective date. It is clear from the hearing officer's written reasons for judgment that his denial of back due benefits was tied to Mr. Miles's incarceration rather than his lack of disability, since the judgment requiring CNA to resume payment of Mr. Miles's compensation benefits coincided with his release date, contrary to the law in effect at the time of Mr. Miles's injury. Thus, the hearing officer, having no basis in fact or law, erred in refusing to award payment of Mr. Miles's back due weekly compensation benefits *78 beginning from the date his benefits were terminated, December 22, 1990, and ending upon Mr. Miles's release from jail, October 27, 1991.

B. Penalties and Attorney's Fees
It is well settled that a workers' compensation claimant is not entitled to penalties and attorney's fees unless the withholding or termination of benefits is found to be arbitrary, capricious or without probable cause. LSA-R.S. 23:1201; 23:1201.2; Scott v. Central Industries, Inc., 602 So.2d 201 (La.App. 3d Cir.1992). Further, we stated in Scott that if the employer (in this case, the insurer) has a bona fide dispute as to whether the claimant is no longer disabled, penalties and attorney's fees will not be awarded.
Whether or not a termination of benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Brown v. Manville Forest Products Corp., 565 So.2d 496 (La.App. 2d Cir.), writ denied, 567 So.2d 1127 (La.1990). Absent manifest error, the hearing officer's determination that an award of penalties and attorney's fees is not warranted will not be disturbed on appeal. Savant v. Employers Nat. Ins. Co., 502 So.2d 176 (La.App. 3d Cir.1987). An injured employee may not be cut off from compensation benefits on the basis of inconclusive medical reports; it is incumbent upon the insurer to make reasonable efforts to ascertain the employee's exact medical condition at the time benefits are terminated. However, when an insurer's termination of compensation is based upon competent medical evidence, the action is not arbitrary and capricious. Savant, supra, 502 So.2d at 179. Furthermore, an insurer is not automatically penalized under these statutes for terminating compensation benefits even if ultimately the insurer's decision is found to be in error. Dearmon v. Louisiana Pacific Corp., 465 So.2d 144 (La.App. 3d Cir.), writ denied, 467 So.2d 1136 (La.1985). The statutes authorizing penalties and attorney's fees where the insurer is arbitrary, capricious, or without probable cause in terminating compensation benefits are penal in nature and must be strictly construed so that insurers are not penalized for contesting a close factual question in a workers' compensation proceeding and relying on valid defenses. Dearmon, supra; Landry v. Central Indus., Inc., 592 So.2d 478 (La.App. 3d Cir.1991), writ denied, 593 So.2d 381 (La.1992); Marcel v. Craig Guidry Construction Co., 511 So.2d 48 (La.App. 3d Cir.1987).
In the case sub judice, we find that the hearing officer was clearly wrong in concluding that CNA was not arbitrary, capricious or without probable cause in terminating Mr. Miles's compensation benefits and in failing to award penalties and attorney's fees. CNA terminated Mr. Miles's benefits on December 22, 1990, after his treating physician, Dr. Litel, opined that Mr. Miles failed to have the requested diagnostic tests performed and that he was not sure whether Mr. Miles's complaints were related to his August 1989, accident or some other accident. Dr. Litel also reported that he felt the surgical procedures he performed on Mr. Miles's back were definitive.
The record reveals that CNA knew of Mr. Miles's incarceration. CNA did not inquire of Calcasieu Parish jail personnel as to Mr. Miles's medical treatment, physical complaints or whereabouts in order to ascertain Mr. Miles's medical condition. CNA chose, instead, to rely solely on the report submitted by Dr. Litel as to Mr. Miles's failure to have the requested diagnostic tests performed. The record is also clear that Mr. Miles underwent the very tests Dr. Litel recommended while he was incarcerated. This court stated in Savant, supra, 502 So.2d at 179, that an injured employee may not be cut off from compensation benefits on the basis of inconclusive medical reports. At best, Dr. Litel's report to CNA was inconclusive. Further, Savant makes it incumbent upon the insurer to make reasonable efforts to ascertain the employee's exact medical condition. CNA, having knowledge of Mr. Miles's incarceration, made no such effort.
The hearing officer's refusal to award penalties and attorney's fees is a factual determination and subject to the manifest error rule. However, because CNA failed to make even reasonable efforts to determine Mr. Miles's medical condition when they knew that he *79 was incarcerated, and had they made the slightest effort they would have discovered his exact medical condition, it was manifestly erroneous for the hearing officer to find that CNA was not arbitrary, capricious or without probable cause when it terminated Mr. Miles's compensation benefits on December 22, 1990.
We hold CNA's termination of benefits to be arbitrary and capricious due to its failure to make reasonable efforts to ascertain Mr. Miles's medical condition relying only on Dr. Litel's inconclusive report. Under LSA-R.S. 23:1201(B) and (E), Mr. Miles is entitled to penalties amounting to twelve percent of any unpaid compensation installment from December 22, 1990 through October 27, 1991.
Mr. Miles is also entitled to a judgment of attorney's fees under the authority of LSA-R.S. 23:1201.2. We find $5,000.00 to be a reasonable amount in light of the effort, evidenced by the record, put forth by Mr. Miles's counsel in preparing this case. See, Thibodeaux v. Woman's Hosp. of Acadiana Foundation, Inc., 578 So.2d 213 (La.App. 3d Cir.1991), and Sharbono v. H & S Construction Co., 478 So.2d 779 (La.App. 3d Cir.1985). LSA-R.S. 23:1201.2 makes the insurer liable. Consequently, CNA is ordered to pay $5,000.00 for being arbitrary, capricious or without probable cause in terminating Mr. Miles's benefits.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation is reversed in favor of plaintiff-appellant, Leon Miles, to award Mr. Miles back due weekly compensation benefits in the amount of $267.00, commencing December 22, 1990, and ending October 27, 1991. Defendant-appellee, CNA Insurance Company, is likewise cast in judgment for twelve percent penalties on any unpaid compensation installment from December 22, 1990 through October 27, 1991. Defendant-appellee, CNA Insurance Company, is cast in judgment for attorney's fees in the amount of $5,000.00.
In all other respects, the judgment of the Office of Workers' Compensation is affirmed.
All costs of this appeal are assessed against defendant-appellee, CNA Insurance Company.
REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.