647 So.2d 581 (1994)
Alvin THOMAS, Plaintiff-Appellee,
v.
UNION TANK CO. & Self Insurance Co., Defendants-Appellants.
No. 94-778.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
*583 John Blake Deshotels, Ville Platte, for Alvin Thomas.
Stephen Howard Vogt, Charles Charest deLauson Thibaut, Baton Rouge, for Union Tank Co. and Self Ins. Co.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
PETERS, Judge.
This is a workers' compensation case. The plaintiff, Alvin Thomas, was injured during the course and scope of his employment with Union Tank Car Company (Union Tank) on October 5, 1986, when an airhose struck his left knee. All weekly compensation benefits and medical expenses were paid through November 8, 1989. Thomas filed suit in district court on March 23, 1990, seeking payment of weekly benefits, medical expenses, mileage, penalties, and attorney fees.[1] The trial court *584 found that Thomas was totally and permanently disabled as of October 5, 1986, by virtue of the "odd-lot" doctrine and that Union Tank was arbitrary, capricious, and without probable cause in terminating benefits. The court awarded weekly compensation benefits beginning November 15, 1989, plus penalties and attorney fees. The employer appeals this judgment.

DISCUSSION OF RECORD
Prior to commencement of trial on the merits, it was stipulated that Alvin Thomas was injured during the course and scope of his employment with Union Tank on October 5, 1986, when he was struck on the left knee by an airhose. At that time, he was employed as a welder earning $9.67 per hour. During the course of the next year, Thomas worked sporadically for Union Tank while receiving medical treatment for his injury. He continued to have problems with his injury and on October 23, 1987, discontinued work because, according to Thomas, he could no longer stand the pain. All workers' compensation benefits and medical expenses were paid in full by the employer through November 8, 1989.
Dr. Art Flick, an orthopedic surgeon, performed arthroscopic surgery on Thomas' left knee in November of 1987 and continued to treat him through August of 1988. At that time, Dr. Flick referred Thomas to Dr. Andrew Kucharchuk, another orthopedic surgeon, who performed a second arthroscopic surgical procedure on the left knee on October 25, 1988. This surgery revealed a torn medial meniscus; an anterolateral flap tear; and chondromalacia of the patella, lateral femoral condyle, and medial femoral condyle. Dr. Kucharchuk testified that in the surgical procedure the posterior horn of the medial meniscus and the anterolateral flap tear were excised, the lateral meniscus was trimmed, and the patella was shaved. He considered the surgery successful and was of the opinion in February of 1989, that Thomas was rapidly approaching maximum medical recovery concerning his left knee.
However, in March of 1989, Thomas complained to Dr. Kucharchuk of pain in his right knee. Dr. Kucharchuk diagnosed this complaint as a degenerative tear of the meniscus and synovitis of the right knee. On July 27, 1989, Dr. Kucharchuk performed arthroscopic surgery on Thomas' right knee. The trial court concluded that by favoring the injured left knee, Thomas sustained injury to his right knee. Thus the trial court found that the right knee injury was also related to the accident. This finding is not in dispute on appeal and is supported by Dr. Kucharchuk's testimony. Following the surgery on his right knee, Thomas did not return to work at Union Tank.
In May of 1989, or before the surgery on the right knee, Mark Cheairs, a vocational rehabilitation consultant, employed by Union Tank, performed a job analysis evaluation and concluded that Thomas could perform janitorial work. Dr. Kucharchuk approved this recommendation, and Thomas returned to work on June 5, 1989, as a "helper" at a wage of $9.35 per hour. However, this employment was short-lived because of the surgery on July 27, 1989.
In October of 1989, Thomas was incarcerated for a matter not related to his employment. On October 4, 1989, Dr. Kucharchuk was of the opinion that Thomas was rapidly approaching maximum medical recovery and considered him a candidate for light duty work. During the time of Thomas' incarceration, Dr. Kucharchuk did not see him professionally. All weekly compensation benefits and medical expenses were terminated as of November 8, 1989.
Thomas continued to receive medical attention while incarcerated. Dr. John Tassin, a general practitioner, first saw Thomas on November 8, 1989, for treatment of a high blood pressure condition. However, at that time, Dr. Tassin also examined Thomas' knees and found that he had "two bad knees" and that both knees were full of fluid. Dr. Tassin treated Thomas through December *585 30, 1992, and noted Thomas' continued complaints of pain in the knees and found the knees to be swollen. On December 30, 1992, Thomas was still complaining of his knees and Dr. Tassin considered his patient's problems to be both chronic and debilitating.
Thomas testified that he became a trustee after he had been incarcerated about two or three months, at which time he began working in the kitchen of the jail. He indicated that his duties were somewhat modified because of problems with his knees and, despite limiting his activities, he continued to have considerable pain.
On July 19, 1992, Thomas received an "early" release from prison. He testified that he contacted Winston Fontenot, a Union Tank plant manager, to see if he still had a job and was told "no." Thomas testified that if Union Tank had offered him employment similar to what he had been doing before his incarceration, he would have been willing to try to return to work. As of the time of trial, Thomas had not returned to any gainful employment.
Thomas was again examined professionally by Dr. Kucharchuk on April 18, 1994. Dr. Kucharchuk was of the opinion that Thomas could not return to his former job but could function in a sedentary or light duty capacity. According to Dr. Kucharchuk, Thomas could probably lift up to 25 pounds frequently and 35 pounds occasionally. He also thought that Thomas could occasionally climb and crawl but could never squat. It was his opinion that Thomas could perform employment on an eight hour day that allowed him to sit during the time of employment; that he could perform employment that required standing for up to four hours a day; that he could perform employment that required walking up to two hours a day; and that he could perform employment that alternatively required sitting and standing up to eight hours a day. However, his estimated functional capacity report conditions the employment situations upon additional rest periods. Dr. Kucharchuk was of the opinion that Thomas had a permanent partial impairment of 10 to 15 percent of the total body because of the injury to both of his knees.
On May 10, 1994, a job analysis was again completed for a job as janitor with Union Tank. Dr. Kucharchuk approved the return to work at that job with the limitation of no squatting. He thought that at some time in the future (when he is 60 years old) Thomas probably would need some sort of joint replacement but that right now he needed to be gainfully employed.

OPINION
The employer has appealed the judgment of the trial court based on five assignments of error. These are:
1. The trial court erred in holding that the amendments to the Louisiana Worker's Compensation Act pertaining to total and permanent disability did not apply to the case before it and in applying "odd-lot" jurisprudence to find plaintiff, Alvin Thomas, permanently and totally disabled.
2. The trial court committed manifest error in finding that plaintiff, Alvin Thomas, discharged the burden of proving by clear and convincing evidence total and permanent disability.
3. Alternatively, the trial court committed reversible error in finding plaintiff, Alvin Thomas, to be totally and permanently disabled without making a determination of whether there was a reasonable probability that the plaintiff was able to achieve suitable gainful employment following a program of vocational rehabilitation.
4. The trial court erred in failing to apply legislation retroactively which suspends the right of an injured worker to receive worker's compensation benefits during the term of imprisonment or, alternatively, in finding the work-related accident caused the period of disability during plaintiff's imprisonment.
5. The trial court committed manifest error in finding that the defendant, Union Tank Car Company, acted arbitrarily, capriciously, and without probable cause in terminating compensation after the plaintiff's treating physician released him to return to work.
*586 ASSIGNMENTS OF ERROR NO. 1, 2 AND 3.
The trial court found that Thomas is unable to perform gainful employment for which he is suited by age and experience without experiencing substantial pain and that this disability will continue indefinitely. As a result, the court held that Thomas' accident of October 5, 1986, left him permanently and totally disabled by virtue of the odd-lot doctrine. Union Tank contends the trial court erred in applying the odd-lot doctrine and not applying the 1983 Amendments to the Louisiana Workers' Compensation Act. Additionally, Union Tank contends Thomas failed to prove by clear and convincing evidence that he is totally and permanently disabled.
We first note that at the time of the injury, Louisiana Revised Statutes 23:1226(D) required that the court determine, prior to adjudicating an injured employee totally and permanently disabled, whether there was a reasonable probability that, with appropriate training or education, the injured employee might be rehabilitated to the extent that he could achieve suitable gainful employment and whether it was in the best interest of the employee to undertake such training or education. We do not find that the trial court made such a determination prior to adjudicating Thomas totally and permanently disabled in this case. A premature finding of permanent total disability will not stand, as it is without the procedural foundation called for by the mandatory provisions of this statute. City of Crowley v. Comeaux, 93-1116 (La.App.3d Cir. 4/6/94); 638 So.2d 658, writ denied, 94-1184 (La. 6/24/94); 640 So.2d 1355. See also, Pool v. G.N. Batteries, Inc., 480 So.2d 898 (La. App.2d Cir.1985). For this reason the judgment awarding total and permanent disability benefits is reversible. Additionally, for the reasons that follow, we find the adjudication of total and permanent disability benefits was itself erroneous.
Prior to the 1983 amendments to Louisiana Revised Statutes 23:1221(2), the odd-lot doctrine was an appropriate method of determining permanent total disability. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). To fit within the category of oddlot workers, a claimant was required to show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, he could not perform the substantial and material parts of some gainful work or occupation with reasonable continuity. Oster, supra. The claimant could present a prima facie case for classification in the odd-lot category by showing a combination of factors indicating that the services which he could render were so limited in quality, quantity, or dependability that a market for his labor did not exist within which he could effectively compete. Oster, supra. The employer was then required to show that there were jobs available to provide a steady income to the claimant or that would provide him a gainful occupation. Oster, supra. Additionally, a worker could also be treated as an odd-lot worker if his pain appreciably limited the types of work available to him and greatly diminished his ability to compete in the labor market unless it was shown that there were jobs realistically available to him. Lattin v. Hica Corporation, 395 So.2d 690 (La.1981).
However, Louisiana Revised Statutes 23:1221(2)(c) as amended by La.Acts No. 1983, No. 1, Section 1, effective July 1, 1983, requires the employee who is not engaged in any employment or self-employment as described in Louisiana Revised Statutes 23:1221(2)(b) and who seeks permanent and total disability benefits to prove "by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment" (emphasis added).
This statutory amendment has abrogated the odd-lot doctrine in total and permanent disability cases. Even if an employee is in pain, he must work unless he proves *587 by clear and convincing evidence that he is physically unable to engage in any employment or self-employment as described in Louisiana Revised Statutes 23:1221(2)(c). Whatley v. Hartford Accident & Indemnity Co., 509 So.2d 671 (La.App. 3d Cir.), writ denied, 512 So.2d 441 (La.1987). See also, Long v. Manville Forest Products Corp., 554 So.2d 181 (La.App.2d Cir.1989) (the working-in-pain doctrine has been eliminated as an avenue of recovery) and Cloud v. Cajun Contractors & Engineers, Inc., 517 So.2d 1010 (La.App. 3d Cir.1987) (the existence of pain is not relevant to a determination of total permanent disability).
In this case Thomas was required to prove entitlement under the more stringent 1983 amendments to Louisiana Revised Statutes 23:1221(2) to establish total and permanent disability. The evidence presented does not justify such a conclusion. Dr. Kucharchuk was of the opinion that on October 4, 1989, the plaintiff was capable of returning to light duty work. While he was incarcerated, Thomas worked in the prison kitchen, although in a limited capacity. Additionally, when Dr. Kucharchuk saw Thomas again on April 18, 1994, the doctor was of the opinion that, although Thomas could not return to his former job, he could probably work in a sedentary or light duty capacity. Dr. Kucharchuk approved a job analysis for janitorial work prepared by Mark Cheairs, with the restriction of no squatting. Thus, Mr. Thomas has failed to prove entitlement to permanent total disability benefits under the 1983 amendments to Louisiana Revised Statutes 23:1221(2).
Therefore, we conclude the first three assignments of error by the employer have merit. The trial court erroneously applied the odd-lot doctrine and not the 1983 amendments to the Louisiana Workers' Compensation Act to find the employer totally and permanently disabled, and the employee failed to prove his disability by clear and convincing evidence under those amendments. Additionally, the trial court failed to make a determination of whether there was a reasonable probability of the employee achieving suitable employment after vocational rehabilitation before adjudicating him totally and permanently disabled. The finding of total and permanent disability by the trial court is reversed.
However, jurisprudential interpretations of the 1983 Amendments to Louisiana Revised Statutes 23:1221(1) have upheld the viability of the odd-lot doctrine in temporary total cases. Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3d Cir.), writ denied, 497 So.2d 312 (La.1986). See also, Long, supra. We recognize that the odd-lot and working-in-pain doctrines have since been legislatively abrogated in temporary total cases as well. [See 1989 La.Acts No. 454, Section 6, effective January 1, 1990 and Long v. Manville Forest Products Corp., 593 So.2d 854 (La.App.2d Cir.), writ not considered, 595 So.2d 649 (La. 1992)].
In considering the question of temporary total benefits, we note that Dr. Kucharchuk was of the opinion Thomas could only return to sedentary or light duty work with the limitation of no squatting. At the time of trial, Thomas was 47 years old. He had quit school in the eighth grade but had one year of vocational training for welding. His work experience appears to be limited to manual labor. Dr. Tassin was of the opinion that over the time he treated Thomas, his patient's knees would restrict him from normal activity. Thomas testified at trial that he was still having problems with his knees and that walking or trying to bend down too far caused problems. He indicated that he has good days when he can "get around" okay and bad days.
Because of his education, age, training, physical limitations, and pain, we find that the services which he could render would be so limited that a market for his labor does not exist in which he could effectively compete. Even the kitchen work performed while incarcerated was apparently modified. Additionally, the janitorial work with Union Tank proposed in the job analysis created by Mark Cheairs would have to be modified to eliminate squatting. While Union Tank expressed a willingness to modify the job to this extent, we have not found that it actually offered the job to Thomas or that he accepted *588 it. Without more, Union Tank has failed to rebut the prima facie showing of odd-lot status by showing that there are jobs available to provide a steady income to Thomas or that would provide him with a gainful occupation. Thus, we hold that Thomas is entitled to temporary total disability benefits.
ASSIGNMENT OF ERROR NO. 4.
Union Tank also contends that Thomas forfeited the benefits that would have accrued during his incarceration. Louisiana Revised Statutes 23:1201.4 provides in part that an employee's right to compensation benefits, including medical expenses, is forfeited during any period of incarceration unless a hearing officer finds that an employee has dependents who rely on a compensation award for their support. However that statute became effective January 1, 1990, and is not applicable to this case since Thomas' injury occurred prior to its effective date. The governing law in a compensation case is that in effect at the time of the alleged injury. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). Furthermore, prior to the amendment, in Crawford v. Midwest Steel Company, Inc., 517 So.2d 918 (La.App. 3d Cir.1987), we found no statutory authority for suspension or forfeiture of benefits during incarceration. We find Crawford controlling in this case. See also, Miles v. F.D. Shay Contractor, Inc. & CNA, 626 So.2d 74 (La.App.3d Cir.1993).
ASSIGNMENT OF ERROR NO. 5.
Whenever an employee's right to benefits has not been reasonably controverted, penalties shall be added. La.R.S. 23:1201(E). Additionally, an employer or insurer who discontinues payment of claims due when the discontinuance is found to be arbitrary, capricious, or without probable cause shall be subject to the payment of all reasonable attorney fees. La.R.S. 23:1201.2.
The trial court awarded attorney fees in the amount of $7,500.00 plus penalties based on its conclusion that Union Tank terminated benefits because of Thomas' incarceration. The court found Union Tank acted arbitrarily, capriciously, and without probable because Union Tank knew or should have known that benefits could not be terminated because an employee is incarcerated. Crawford, supra.
Union Tank urges on appeal that the medical and lay testimony regarding Thomas' ability could have provided a justifiable basis for terminating benefits. Specifically, Union Tank points out that at the time of Thomas' incarceration, his treating physician was of the opinion that Thomas could return to the work force and had issued a report to that effect; that a position had been analyzed and tendered by Union Tank to Thomas; and that there was no medical evidence controverting Dr. Kucharchuk's opinion that Thomas could perform the job duties of the contemplated employment.
However, Union Tank offered no testimony as to the actual reason benefits were terminated. We might well affirm the award of penalties and attorney fees on the basis of lack of evidence of the facts existing and known to Union Tank at the time payments were stopped. See Levatino v. Domengeaux and Wright, P.L.C., 593 So.2d 721 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La. 1992) and Culotta v. Great Atlantic and Pacific Tea Company, 524 So.2d 259 (La.App. 5th Cir.), writ denied, 530 So.2d 88 (La.1988).
An injured employee may not be cut off from compensation benefits on the basis of inconclusive medical reports. Miles, supra. Rather, it is incumbent upon the provider of benefits to make reasonable efforts to ascertain the employee's exact medical condition at the time benefits are terminated. Miles, supra. The action is not arbitrary and capricious, however, when compensation is terminated on the basis of competent medical evidence. Miles, supra. Whether or not a termination of benefits is arbitrary, capricious, or without probable cause primarily depends on the facts known to the employer or insurer at the time of its action. Miles, supra.
While a job analysis was created by Mark Cheairs and apparently approved by Dr. Kucharchuk, the analysis was made prior to the arthroscopic surgery to Thomas' right knee. The record does contain a letter from Dr. Kucharchuk to Union Tank's insurer which indicates that as of October 4, 1989, Dr. Kucharchuk was of the opinion that Thomas was rapidly approaching maximum medical benefit and could be placed on light duty capacity. However, this letter is dated *589 January 19, 1990, and benefits were terminated on November 8, 1989. We have found no evidence that this information was before Union Tank at the time it made the decision to terminate benefits. Furthermore, on the same day that benefits were terminated, Dr. Tassin saw Thomas and found that Thomas had two "bad knees" and that the right knee "was just a terrible knee." We do not find that Union Tank made a reasonable effort to ascertain Thomas' exact medical condition at the time benefits were terminated. Therefore, we find that Thomas' right to benefits was not reasonably controverted and that the termination of benefits was arbitrary, capricious, and without probable cause. Additionally, Union Tank should have been familiar with the decision in Crawford, supra, holding that Louisiana workers' compensation statutory law did not provide for forfeiture of benefits during the period of incarceration. Therefore we find no error in the trial court's award of statutory penalties and attorney fees.

DISPOSITION
For the foregoing reasons, we reverse the award of permanent total disability benefits and award Thomas temporary total disability benefits. We affirm the judgment in all other respects and assess costs of this appeal to Union Tank.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] Thomas apparently filed a claim for compensation in the Office of Worker's Compensation on December 29, 1989. 1989 La. Acts No. 260, Section 4(C) provides that claims filed with the director prior to January 1, 1990, but which are not resolved, whether by the parties' acceptance of the director's recommendations, compromise settlement, or judgment of a court, shall be resolved by the procedures in effect prior to January 1, 1990. The procedure in effect prior to January 1, 1990, required that a verified petition be filed in district court when a party rejected the recommendation of the Office of Worker's Compensation. Therefore, subject matter jurisdiction was properly vested in the district court.