657 So.2d 206 (1995)
Raymond JOINER, Plaintiff-Appellant,
v.
NEWBERG VENTURE and the Insurance Company of North America, Defendants-Appellees.
No. 94-1533.
Court of Appeal of Louisiana, Third Circuit.
May 3, 1995.
*207 Brian D. Cespiva, Alexandria, for Raymond Joiner.
Russell Louis Sylvester, Natchitoches, for Newberg Hardway.
Before LABORDE, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
The employer in this workers' compensation case, Newberg Hardaway, Inc., appeals a judgment of the Office of Workers' Compensation which determined that Newberg unreasonably reclassified the plaintiff, Raymond Joiner's, temporary total disability benefits to supplemental earnings benefit and, consequently, awarded attorney's fees and penalties.
We affirm.

I.

ISSUES
The issues are whether the conversion of benefits from temporary total disability benefits to supplemental earnings benefits and the assessment of penalties and attorney's fees were proper.

II.

FACTS
The parties stipulated that Joiner suffered a compensable injury on September 8, 1989 and $267.00 per week was the correct amount of compensation benefits due Joiner. The parties do not dispute the following facts: (1) Joiner received TTD benefits from the date of the accident until January 28, 1993; (2) Joiner's benefits were converted from TTD to S.E.B. on January 28, 1993; (3) upon conversion of his benefits, Joiner continued to receive the same amount of weekly compensation, $267.00; and, (4) at the time of trial, Joiner was still receiving those benefits.
From our review of the record, we find that the hearing officer's written reasons for judgment are logically articulated and hereby incorporate them into this opinion and adopt them as our own.
The hearing officer wrote:
"Plaintiff is 51 years old and has a 9th grade education. He has always performed heavy manual labor. His wrist injury, bilateral carpal tunnel syndrome, resulted from a 75 foot fall. He also sustained injury to his low back."
"Plaintiff testified that he suffers from pain, swelling, tingling and some numbness in the wrist. He sometimes obtains relief by crossing his hands over his chest. He also feels pain in the low back, tingling down the sides of his legs, and numbness in the toes."
"The deposition of Dr. Walter S. Foster, orthopaedic surgeon, indicates that treatment began November 6, 1989. A CT scan revealed mild bulging with no obvious disc herniation in the low back. Dr. Foster also found degeneration at L3-4 and L4-5, as well as bilateral carpal tunnel syndrome."
"Plaintiff underwent bilateral carpal tunnel release surgery on December 19, 1989. He was prescribed two wrist splints. Medication relieved the back pain somewhat, but not significantly. Dr. Foster prescribed a back brace and physical therapy."
"By April 4, 1990, Dr. Foster felt that plaintiff could return to some type of work except for his previous employment. Back *208 pain continued and, by May, increased with pain radiating into the right leg. A chair back brace was prescribed. EMG's revealed bilateral L-5 radiculopathy."
"Plaintiff then began a reconditioning or strengthening program with Dr. Gerald LeGlue. By one month later, plaintiff had reached a plateau with the physical therapy and Dr. Foster recommended a functional capacity evaluation."
"On September 20, 1990, Dr. Foster calculated a whole body impairment rating totalling 46%."
"Plaintiff continued to complain of increasing back pain. An MRI performed November 24, 1992 demonstrated spinal canal narrowings at L2-3 and L3-4 primarily due to diffusely bulging discs at these two levels. Dr. Foster explained that these are considered to be degenerative changes."
"Dr. Foster saw plaintiff last on September 28, 1993. Medications were continued for inflammation and deterioration of the back."
"Dr. Marion Milstead treated plaintiff for his bilateral carpal tunnel syndrome. He performed second surgeries on both wrists, on October 18, 1991 and December 6, 1991. Dr. Milstead believes that his condition is worsening and pronounced him `static' as of April 5, 1993. Dr. Milstead believes plaintiff reached maximum medical improvement as of that date and my [sic] be in need of additional surgery."
"If Dr. Foster's impairment rating is accurate, Dr. Milstead testified that JOINER has a 55% disability rating of the whole body. He recommends additional surgery and feels that plaintiff should not be using his hands."
As indicated in the hearing officer's findings of fact, there was no pronouncement of Joiner's "static" condition until April of 1993. Thus, the conversion occurred before any conclusion by either doctor that Joiner's condition had stabilized. However, by the time of Dr. Foster and Dr. Milstead's depositions, they both opined that Joiner's wrist and low back problems were worsening. The defendants presented no testimony to controvert Joiner's testimony of continued pain.
The defendants presented the testimony of Ken Brister, a vocational rehabilitation counselor. Brister testified that his first contact with Joiner was in September of 1990, almost three years before Joiner's alteration in benefits. At that meeting, Brister merely completed a preliminary labor market survey. He further testified that he was asked to close his file on Joiner. Brister was next assigned to Joiner's case in September of 1993, some seven months after the defendants converted Joiner's benefits to S.E.B. Thus, prior to the alteration of Joiner's benefits on January 28, 1993, Brister reported nothing to the defendants pertaining to Joiner's ability to work other than his preliminary employment survey done in 1990.
Based on the above facts, the hearing officer ordered the defendants to reclassify Joiner's benefits as TTD and awarded attorneys' fees in the amount of $2,000.00 plus all costs of the proceedings. She was eminently correct.

III.

LAW AND DISCUSSION

A. Change Of Benefits From TTD To S.E.B.
The hearing officer's findings of fact in a workers' compensation case may not be set aside on appeal in the absence of manifest error, and where there is conflict in the testimony, reasonable inferences of fact should not be disturbed on review. Belaire v. L & L Oil Co., 93-1198 (La.App. 3 Cir. 5/4/94); 636 So.2d 1177.
La.R.S. 23:1221(1)(a) states that an employee is entitled to TTD benefits for:
... any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience ...
For an injury which results in an employee's inability to earn wages equal to ninety percent *209 or more of his or her wages at the time of injury, that employee is entitled to S.E.B. as prescribed by La.R.S. 23:1221(3)(a). An award for TTD benefits shall cease when the physical condition of the employee has resolved itself ... to the point that regular treatment by a physician is not required. La.R.S. 23:1221(1)(d). Thus, entitlement to workers' compensation benefits is based on the claimant's ability or inability to earn wages. Mitchell v. Abbeville General Hospital, 93-1146 (La.App. 3 Cir. 4/6/94); 635 So.2d 540.
The thrust of the defendants' argument is that Joiner has the ability to earn wages but not equal to ninety percent or more of his pre-injury wages and therefore they took the appropriate action when they altered his benefits from TTD to S.E.B.
The hearing officer found that the change in Joiner's benefits from TTD to S.E.B. was improper. We find no error in this determination. The defendants evaluated Joiner in 1990. Without a change in medical condition or identification of jobs available which claimant could perform, the defendants had no basis upon which to change Joiner's classification from TTD benefits to S.E.B. on January 28, 1993, three years later. White v. Louisiana State Penitentiary, 93-770 (La. App. 3 Cir. 3/2/94); 634 So.2d 1271. Moreover, the evidence reveals that Dr. Milstead now characterizes Joiner's carpal tunnel syndrome as severe and strongly recommends that Joiner undergo a third surgery. In 1991, Dr. Milstead advised plaintiff to try to start using his hands but to not go back to work. By April of 1992, the doctor noticed that every time Joiner came in for a visit, his hands were swollen and he noted that Joiner only had a slight improvement in his condition. Joiner has pain in his hands even when he does not use them due to the swelling and pressure on the nerve in his hands. Most importantly, Dr. Milstead, by the time of his deposition, stated that any jobs that require fine dexterity or hand skills were not appropriate for Joiner.

B. Penalties And Attorneys' Fees
Whether the defendants' alteration of Joiner's workers' compensation benefits from TTD to S.E.B. was arbitrary, capricious, or without probable cause so as to warrant imposition of penalties and attorneys' fees depends primarily on the facts known to the defendants at the time of their action. Absent manifest error, the hearing officer's determination that an award for penalties and attorneys' fees is warranted will not be disturbed on appeal. Miles v. F.D. Shay Contractor, Inc., 626 So.2d 74 (La.App. 3 Cir.1993). The insurer must make reasonable efforts to ascertain the employee's exact medical condition at the time benefits are terminated or changed. Id.
The hearing officer found that the defendants were arbitrary in their decision to change Joiner's benefits. We agree. The defendants did not have enough evidence to reasonably controvert Joiner's right to receive TTD benefits on January 28, 1993 when it changed his benefits to S.E.B. As of that date, the medical evidence in their possession was almost three years old and preliminarily indicated that Joiner could perform some work that involved his hands. Since that time Joiner has been through two extensive surgeries on his hands; his doctor recommends a third surgery and that he not use his hands. The defendants' efforts to ascertain Joiner's medical condition as of January 28, 1993, were not reasonable. They reopened Joiner's file in September of 1993, well after they changed his benefits.
By January of 1993, and the date of the doctor's deposition, Joiner's condition worsened, yet the defendants made no effort after September of 1990, and prior to January of 1993, to further investigate Joiner's condition before they reclassified his benefits. If subsequent to an initial optimistic report, an insurer receives medical information indisputedly showing disability at a particular date, the insurer may not blindly rely upon the earlier report and solely on its basis avoid penalties for arbitrary nonpayment of benefits. Slate v. Travelers Insurance Co., 556 So.2d 903 (La.App. 3 Cir.1990). In the present case, the defendants relied solely on a medical report and preliminary employment survey conducted nearly three years before the alteration in benefits occurred. The defendants failed to conduct a subsequent *210 medical investigation to determine Joiner's condition.
The defendants argue that since they paid Joiner the same amount under S.E.B. as they did under TTD, he did not lose anything. However, pursuant to La.R.S. 23:1221(3)(d)(iii), S.E.B. is terminated after at least 104 weeks when an employee retires, or begins to receive social security benefits. See also, White, 634 So.2d at 1273. This argument is without merit.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are to be assessed against defendants-appellants.
AFFIRMED.