| JAMES L. CANNELLA, Judge.
The Defendant, Wal-Mart Stores, Inc., appeals from a summary judgment in a workers’ compensation dispute filed by the Plaintiff, Dora Wilkerson, for reinstatement of benefits, penalties and attorney’s fees. We affirm.
The Plaintiff injured her back and ankles in the course and scope of her employment on December 14, 1999. The injuries occurred when the bottom of a box of battery packages collapsed as the Plaintiff lifted it, spilling the packages and causing the Plaintiff to twist her body to avoid the falling batteries. The Defendant paid workers’ compensation benefits to the Plaintiff until March 28, 2002, when it suspended her benefits because she failed to undergo a myelogram which was recommended by her treating physician in late 1999 or early 2000. Thereafter, on August 28, 2002, the Plaintiff filed a Disputed Claim for Compensation for reinstatement of her benefits, penalties and attorney’s fees. On April 30, 2003, the Plaintiff filed a Motion for Summary Judgment, contending that the facts are undisputed and that the Defendant was not legally entitled *512 to suspend her compensation benefits without judicial approval.
After a hearing on the motion for summary judgment, the workers’ compensation judge found in favor of the Plaintiff and rendered a judgment |3awarding a lump sum of indemnity benefits from the date on which the benefits were suspended, resumption of the benefits, penalties of $2,000, attorney’s fees of $2,500 and costs. On appeal, the Defendant contends that the trial judge erred in granting summary judgment.
La.C.C.P. art. 966 provides that a summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. Under the 1997 amendment to the article, summary judgment is favored, but the burden of proof remains with the movant. Cortinas v. Highway Transport, Inc., 01-725, p. 8 (La. App. 5th Cir.1/15/02), 807 So.2d 940, 944.
In the Plaintiffs motion for summary judgment, she attached the Notice of Payment form indicating that the benefits were suspended due to “employee failing to cooperate,” and letters regarding this action between the attorneys for the parties. The Defendant attached the same documents, plus the written reasons for judgment and findings of fact from a prior hearing related to a claim for attorneys fees and penalties for the Defendant’s initial failure to authorize the tests that it now insists the Plaintiff must undergo. The following chronology of events was taken from the reasons for judgment and findings of facts following that hearing. The facts are undisputed.
The Plaintiff was treated for her back injury by Dr: Robert Mímeles, an orthopedic surgeon. An magnetic resonance imaging (MRI) test showed a broad-based bulge at L4-L5 and L3-L4, with impingement at L4-L5. Dr. Mímeles referred the Plaintiff to a neurosurgeon, Dr. William Johnston, for evaluation. He recommended diagnostic testing in the form of a myelogram and computerized Axial Tomography (CT) scan. The myelogram was scheduled for | ¿February 28, 2000. However, the Plaintiff failed to have the test at that time, explaining to the doctor on March 6, 2000 that she was feeling better. On May 26, 2000, Dr. Johnston again sought authorization from the Defendant for the two tests. On June 6, 2000, the Defendant requested medical documentation from the doctor supporting the request for the tests. Dr. Johnston did not respond. The Defendant then sought a second opinion from Dr. John Schuhmacher, a neurosurgeon, on July 3, 2000. The Plaintiff was seen on September 13, 2000. Dr. Schuhmacher found a ruptured disc. In his report, he recommended a repeat magnetic resonance imaging test.
On December 20, 2000, the Defendant petitioned the court for an independent medical examination (IME). Dr. John D. Jackson, a neurosurgeon, was appointed. He also found that the Plaintiff suffered a ruptured disc at L3-L4. In his report of February 16, 2001, Dr. Jackson recommended surgical removal of the ruptured disc. Five months later, on July 30, 2001, the Defendant authorized the surgery.
The Plaintiff cancelled or failed to appear for appointments with Dr. Johnston in September, October, and November. Consequently, the Defendant filed a Motion to Compel Examination. The Plaintiff was subsequently re-examined by Dr. Johnston on November 28, 2001 and February of 2002. Both times, he recommended that the Plaintiff undergo a mye-logram. The Plaintiff refused and the Defendant suspended her benefits.
*513 The Defendant argues that the suspension did not require a court order. It asserts that the Notice of Benefits form contemplates a unilateral suspension of benefits because it is one of the actions listed. Further, quoting excerpts from Dr. Johnston’s deposition, it asserts that a my-elogram is not surgery and is necessary to determine the Plaintiffs diagnosis and course of treatment. The | F,Defendant argues that it cannot determine if the Plaintiff suffers from a disability which can be remedied by treatment because the diagnostic tests have not been conducted and Dr. Johnston discharged the Plaintiff after her refusal. The Defendant cites Blanchard v. Delta Marine Engineering, Inc., 252 So.2d 695, 696 (La.App. 1st Cir.1971), for the principal that “An employee cannot willfully and unreasonably, refuse to submit to treatment, or to a program of rehabilitation. His compensation benefits can be discontinued if he is suffering from a disability which can be remedied by treatment in which he refuses.” It also cites Miles v. F.D. Shay Contractor, Inc., 93-64 (La.App.3rd 11/3/93), 626 So.2d 74.
UNILATERAL SUSPENSION OF BENEFITS
We agree with the Plaintiff that the narrow issue before us in this case is whether the Defendant can unilaterally suspend benefits for failing to undergo the myelogram. Since that is a legal issue, the Plaintiff properly filed a motion for summary judgment to resolve it. Neither the justification of the suspension, nor the reasonableness of the Plaintiffs refusal will be addressed here.[1]
La. R.S. 23:1124 provides:
A. If the employee refuses to submit himself to a medical examination at the behest of the employer or an examination conducted pursuant to R.S. 23:1123 ..., his right to compensation ... shall be suspended until the examination takes place. The employee shall receive at least fourteen days written notice pri- or to the examination. When a right to compensation is suspended no compensation shall be payable in respect to the period of suspension.
IrB- An employer or insurer who seeks to compel an employee’s compliance with a medical examination shall be granted an expedited hearing. The workers’ compensation judge shall set a hearing date for the matter within three days of receiving the employer’s or insurer’s motion. The hearing shall be held not less than ten nor more than thirty days after the employee, or his attorney, receives notice, delivered by certified or registered mail, of the employer’s or insurer’s motion ... The hearing shall be conducted as a rule to show cause. Unless the employee can show good cause for his refusal or obstruction of the medical examination, the workers’ compensation judge shall suspend the employee’s compensation and prosecution rights according to Subsection A of this Section.
*514 Reading both provisions together, we conclude that the statute contemplates a contradictory hearing and a judicial determination of unreasonableness prior to the suspension of an employee’s benefits for refusing to be examined.
In addition, the Defendant does not dispute that the myelogram is an invasive procedure.[2] All invasive procedures have inherent dangers. Thus, the Plaintiffs refusal to undergo this test is similar to those cases in which the claimant refuses to undergo surgical procedures. Those cases hold that an employer cannot unilaterally discontinue benefits for failure to undergo surgery. A hearing must be held and the workers’ compensation court must make a judicial determination as to the reasonableness of the employee’s refusal. See: Bass v. Service Trucking Company, Inc., 289 So.2d 78, 81 (La.1974); Green v. Liberty Mut. Ins. Co., 184 So.2d 801 (La. App. 3rd Cir.1966); Smith v. Northwestern Nat. Ins. Co., 432 So.2d 1102 (La.App. 3rd Cir.1983); Seaberry v. T.G. & Y. Stores Co., 467 So.2d 12 (La.App. 1st Cir. 1985), unit denied 470 So.2d 121; Collins v. General Motors Corp., 605 So.2d 219 (La.App. 2nd Cir.1992); Guillory v. City of Crowley, 93-1060, (La.App. 3rd Cir.8/31/94), 643 So.2d 196; City of Jennings v. Clay, 98-225 (La.App. 3rd Cir.10/14/98), 719 So.2d 1164. Thus, we find that the 17Pefendant was arbitrary and capricious in suspending the Plaintiffs benefits unilaterally.
We also note that neither case cited by the Defendant, Miles and Blanchard, are either dispositive or persuasive to this issue. In Miles, the court was not presented with the question of whether the employer is entitled to unilaterally terminate benefits for failing to have diagnostic tests without a hearing. Thus, it is distinguishable. In Blanchard, the quote cited by the Defendant is correct. However, the court also stated that, “The burden is upon the employer to prove the defense that the employee’s willful failure to cooperate with medical treatment, or his willful misconduct, is the cause of the continued disability, and the proof to sustain this defense must be clear, convincing, and conclusive.” Blanchard, 252 So.2d at 697. Those are factual questions yet to be determined by the workers’ compensation judge.
Thus, we find that the workers’ compensation judge correctly granted the summary judgment, and did not err in awarding penalties and attorney’s fees against the Defendant for unilaterally suspending the Plaintiffs benefits.
Accordingly, the judgment of the workers’ compensation court is hereby affirmed. The Defendant is to pay costs of this appeal.
AFFIRMED.

. We note that, even if the reasonableness of the Plaintiff’s refusal were before us, neither party presented any evidence of the purpose of the myelogram. Although both parties quote Dr. Johnston's deposition in which he states that the test will help determine if surgery is necessary, the deposition excerpt is not part of the record. It was not attached to the motion for summary judgment or to the opposition, nor was it introduced in the hearing. "Even though evidence which might be inadmissible in a normal civil proceeding may be considered "competent evidence” in a workers' compensation proceeding, such evidence must still be properly "presented” or admitted in order to be considered and to form part of the record.” Wynder v. Royal Ford Lincoln Mercury, Inc., 98-616, pp. 7-8 (La.App. 3rd Cir.10/28/98), 721 So.2d 1001, 1005; Mitchell v. Terrebonne Parish School Bd., 02-1021, p. 5-7, (La.App. 1st Cir.4/2/03), 843 So.2d 531, 534.

. Only one out of the three examining physicians recommends it. Dr. Jackson and Dr. Schuhmacher have found that the Plaintiff has a ruptured disc and Dr. Jackson has recommended surgery.