834 So.2d 1262 (2002)
COLONIAL NURSING HOME
v.
Liddia J. BRADFORD.
No. 02-588.
Court of Appeal of Louisiana, Third Circuit.
December 30, 2002.
*1265 Robert T. Lorio, Rabalais, Unland & Lorio, Covington, LA, for Appellant, Colonial Nursing Home.
Joseph T. Dalrymple, Rivers, Beck, Dalrymple & Ledet, Alexandria, LA, for Appellee, Liddia J. Bradford.
Court composed of HENRY L. YELVERTON, SYLVIA R. COOKS and BILLIE COLOMBARO WOODARD, Judges.
COOKS, Judge.
Liddia J. Bradford was working as a certified nursing assistant for Colonial Nursing Home on July 29, 2000. On that date, while she and her co-worker Christie Moore were positioning a patient in bed, Bradford claimed she felt something pull in her lower back. When she returned home that day, Bradford stated she took some aspirin and went straight to bed.
The next day, when she awoke in severe pain, Bradford testified she called the nursing home and informed Cheryl Jackson of the incident and indicated she would not be able to come into work that day. According to Bradford, Cheryl Jackson stated she would inform personnel.
That same day, Bradford was taken by her fiancé, Remus Ford, to Huey P. Long Medical Center for treatment. She informed them she was having pain in her lower back. According to Bradford, she also informed the emergency room personnel of other physical problems she had been experiencing. She was given medication for her back pain.
Bradford went back to the medical center the next morning because the pain medication did not alleviate her back pain. Bradford then went to Colonial and reported the incident to Pat Ducote, the director of nursing. Bradford returned to the medical center and requested a work release form. She was told as long as her back was hurting she would not be given a release.
Since the date of the accident, Bradford has been unable to return to her nursing duties. Bradford remained in constant pain, and had very limited mobility. She continued to undergo periodic treatment at Huey P. Long Medical Center, including physical therapy.
Bradford began seeing Dr. Robert Rush on April 6, 2001. He felt there was objective evidence of tightness and tenderness in her back. He ordered an MRI, which revealed a disc bulge at L4-5, and a left sacroiliac strain. She was advised against any bending, twisting, squatting and climbing, which effectively prevented her from engaging in her nursing duties. These were long term restrictions. Dr. Rush felt Bradford's problems were not diskogenic, but the result of a piriformis syndrome, which causes pressure on the sciatic nerve.
*1266 This causes very limited motion, which he felt left her unable to work from the date of the injury.
Dr. John Sweeney examined Bradford at the request of the employer. Dr. Sweeney felt Bradford was exaggerating her symptoms, and concluded he could find "no objective evidence in a detailed review of her past medical history, medical records, medical examination and medical history to support an injury that occurred on or about July 29, 2000." Dr. Sweeney's examination did not take place until approximately eleven months after the incident.
On August 25, 2001, Bradford was sued by Colonial, which asserted that Bradford did not sustain a work-related accident. The employer also alleged that Bradford engaged in action or inaction in violation of La.R.S. 23:1208 and 23:1208.1. At this point, Bradford had not requested payment of any disability benefits or medical expenses stemming from the alleged accident. After retaining a lawyer, Bradford answered the suit against her and filed her claim for disability benefits, medical expenses, penalties and attorney fees.
Dr. Frazer Gaar was appointed by the Office of Workers' Compensation to perform an independent medical examination of Bradford on December 5, 2001. Dr. Gaar also felt Bradford's problems were not diskogenic. He opined that Bradford may have been exaggerating her complaints of pain. He did note her lumbar motion was limited and she had pain in her lower left back. He also found she had decreased sensation to pinprick through the left leg. He concluded, noting the history she related, Bradford sustained a soft tissue injury to her lower back. He felt she was capable of performing medium duty work, with a lifting restriction of fifty pounds and limited bending.
Buster Fontenot, a vocational counselor, was assigned Bradford's claim on January 4, 2002. He was asked to provide a job analysis. He concluded the certified nursing position at Colonial fell within the light to medium level physical demand category. He conferred with Dr. Gaar, who felt Bradford could perform light to medium duty work.
On January 10, 2002, Dr. Rush was contacted by Buster Fontenot, the employer's vocational specialist, to inquire whether Bradford could engage in a sedentary to light-duty job. Dr. Rush responded on January 15, 2002, stating that Bradford could perform light duty work lifting twenty pounds maximum. Dr. Rush also informed Fontenot, that in his opinion, Bradford had not reached maximum medical improvement, although he felt she could attempt light-duty employment.
The matter was tried before the Office of Workers' Compensation. The workers' compensation judge (WCJ) denied the employer's fraud claims under La.R.S 23:1208 and 23:1208.1. He also found Bradford sustained a work-related injury and was temporarily, totally disabled from July 29, 2000 through January 15, 2002. After that date, the WCJ ruled Bradford was entitled to supplemental earnings benefits at an undiscounted rate until her condition changes. Bradford was awarded $11,193.94 in medical benefits. The employer was assessed $2,000 in penalties for its failure to offer vocational rehabilitative services; $2,000 for its failure to pay indemnity benefits; and $2,000 for its failure to pay medical benefits. The employer also was ordered to pay $4,000 in attorney fees for its failure to offer vocational rehabilitation services; $8,000 in attorney fees for its failure to pay indemnity benefits; and $8,000 in attorney fees for its failure to pay medical benefits. The employer appealed the judgment, asserting the following assignments of error:

*1267 1. The workers' compensation judge erred in assessing penalties and attorney fees for the employer's failure to offer vocational rehabilitation services.
2. The workers' compensation judge erred in denying the employer's claim for workers' compensation fraud pursuant to La.R.S, 23:1208 and forfeiture of benefits pursuant to La.R.S. 23:1208.1.
3. The workers' compensation judge erred in awarding temporary, total disability benefits from the date of injury through January 15, 2002.
4. The workers' compensation judge erred in awarding supplemental earnings benefits with a zero earnings offset from January 15, 2002 until a change in status.
5. The workers' compensation judge erred in awarding past due medical benefits and making them payable directly to the employee rather than the medical provider.
6. The workers' compensation judge erred in concluding the employer arbitrarily and capriciously denied benefits and in awarding penalties and attorney fees.

FRAUD AND FORFEITURE OF BENEFITS
La.R.S. 23:1208 governs the consequences of false statements made by parties in connections with a workers' compensation claim. Under R.S. 23:1208, in order for there to be a forfeiture of benefits, the claimant must have: (1) made a false statement or representation; (2) willfully made the statement or misrepresentation; and (3) made the statement or misrepresentation for the purpose of obtaining or defeating any benefits or payments. Resweber v. Haroil Constr. Co., 94-2708 (La.9/5/95), 660 So.2d 7. All of these requirements must be present before a claimant is deemed to have forfeited benefits. Harris v. Bancroft Bag, Inc., 30,431 (La.App. 2 Cir. 4/9/98), 714 So.2d 44. Section 1208 is penal in nature and must be strictly construed. Wallace v. Lavergne Transport, XXXX-XXXX (La.App. 3 Cir. 6/12/02), 819 So.2d 508.
La.R.S. 23:1208.1 applies when an employee is dishonest on an employer's medical questionnaire before the accident or injury. In Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, the supreme court concluded that the legislatively imposed forfeiture under La.R.S. 23:1208.1, applies only if the employer suffers prejudice. An employer is prejudiced only when the false statement "directly relates to the medical condition for which a claim is made or affects the employer's ability to receive reimbursement from the second injury fund." La. R.S. 23:1208.1. The claimant must do more than simply provide untruthful answers before forfeiting benefits. The employer must also prove that the untruthful statements were prejudicial to it and that it provided the employee with statutory notice of the forfeiture provision. Because statutory forfeiture is a harsh remedy, its application must be strictly construed. Resweber, 660 So.2d 7.
Turning to the pertinent facts, when the employer filed suit for fraud and forfeiture of benefits, Bradford had not requested any disability benefits or medical expenses from it. Although Bradford did not express an intent to claim benefits under the Act, the employer nonetheless alleged Bradford "lied about the facts surrounding her accident and her alleged reporting to other employees at the nursing home, as well as her post-accident symptoms and statements to her doctors." Additionally, the employer asserted "she clearly lied about her extensive history of prior medical treatment including specific treatments *1268 and medications she received for prior problems with her back."
The WCJ found the medical records did not establish any "significant experience of pain" by Bradford prior to the accident. He concluded any pain Bradford experienced in the five years prior to the accident were "unexceptional aches and pains or ailments whichwhich [Bradford] could not conceive would be related to the claim that she is making."
The employer also alleged that Bradford was not candid about medical treatment she received at Avoyelles Parish Health Center for left leg problems. Bradford denied she received treatment for any leg problems at Avoyelles. The WCJ reviewed those records, and found they pertained to family planning and family counseling issues. There was no mention in those records of any leg problems.
The employer also referenced a medical record from Dr. Edmond Kalifay dated October 9, 1996, as an example of a "willful misrepresentation." This record, it asserted, shows Bradford complained about pain from hurting her back at a store when she struck a gumball machine. However, Bradford testified this was upper left back pain and she forgot about it because it did not last long. We note Dr. Kalifay found this alleged earlier injury to Bradford's back was a contusion rather than a back strain.
A review of the medical records convinces us, as the WCJ obviously found, Bradford's back pain complaints were general in nature and associated with other ailments, including an epidural injection, urinary tract infection, asthma, acid reflux disease and the noted incident where she struck a gumball machine. There is nothing in the record convincingly establishing that Bradford's pain complaints evidences she suffered from a pre-existing illness or injury that directly relates to the at issue work injury. The employer, additionally, has not established how it has been prejudiced in any way by the alleged failure to disclose.
The WCJ also found that Bradford revealed the majority of these alleged misrepresentations in her deposition. The WCJ stated in his oral reasons:
Turning now to the employerwell, the Court concludes that all of these instances of alleged misrepresentations are nonexistent because Ms. Bradford disclosed all of them at her deposition when she was asked specific rather than general questions about these things and that the variousthe various medical records the employer refers the Court to say, oh, look, this lady was not pain free are just general aches and pains associated with asthma, constipation, reflux gastric disease, pregnancy. All immaterial to a claim for a back injury.
We find no manifest error in the WCJ's finding that Bradford was not guilty of Section 1208 fraud.
As to the alleged 1208.1 violation, the employer argues Bradford denied any prior incidents of back pains or backaches on her Post-Hire Medical Questionnaire, which she provided to the employer on March 7, 2000. The questionnaire stated "[P]lease check in the appropriate space whether or not you currently have or previously have had any of the following conditions." A "yes" or "no" box was provided for each condition.
The WCJ found the post-hire questionnaire was impermissibly ambiguous, as applied to the circumstances of this case. He noted Bradford possessed only a ninth grade education and the questionnaire was given to her without any explanation or instructions. Bradford testified she did not recall having any back problems at the time she filled out the questionnaire. Further, *1269 back pain and backaches are not two of the thirty listed conditions which are presumed permanently partially disabling under La.R.S. 23:1378(F). The record also revealed Bradford checked "yes" to numerous questions on the questionnaire, including questions about whether she suffered from leg pain, leg soreness, asthma and headaches.
This court has held "[w]hen there is any legitimate ambiguity concerning the questionnaire or inquiries into an employee's medical history, a court should lean favorably toward the employee in determining whether he knowlingly [sic] failed to answer the questionnaire truthfully." Holmes v. J.E. Merit Constructors, Inc., 97-553, p. 5 (La.App. 3 Cir. 10/29/97), 702 So.2d 1126, 1131, writ denied, 97-2972 (La.2/6/98), 709 So.2d 741, quoting King v. Grand Cove Nursing Home, 93-779, p. 5 (La.App. 3 Cir. 3/9/94), 640 So.2d 348, 351, writ denied, 94-0865 (La.5/13/94), 641 So.2d 204. We find no error in the WCJ's conclusion that a forfeiture of benefits under La.R.S. 23:1208.1 was not warranted.

DISABILITY BENEFITS
I. Temporary Total Disability Benefits.
The employer argues it was error to award Bradford temporary, total disability benefits from the date of injury through January 15, 2002. It is well settled that a court of appeal may not set aside a WCJ's finding of fact in the absence of manifest error or unless it is clearly wrong. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706. When determinations are based on the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La. 1992); Frelow v. Mills, 94-799 (La.App. 3 Cir. 12/7/94), 647 So.2d 475, writ denied, 95-65 (La.3/10/95), 650 So.2d 1180.
It is apparent from his lengthy reasons for judgment, the WCJ considered all of the medical testimony, and gave greater consideration to the testimony of Dr. Rush, the treating physician, over that of Dr. Sweeney, the employer's choice of physician. The judge specifically noted he gave very little weight to the testimony of Dr. Sweeney, who only saw Bradford once. We also note the trial court assigned limited weight to the testimony of Dr. Gaar, the independent medical examiner. His assessment of and the weight he ascribed these witnesses' testimony fall well within the discretion granted to the trier of fact.
The employer pointed to the testimony of Cheryl Jackson, who stated that on one occasion she observed Bradford shopping and moving in a normal fashion without any apparent difficulty. However, there was testimony from Remus Ford, who lived with Bradford, Dr. Rush, Dr. Balluze and Dr. Gaar showing Bradford had mobility problems. We find no error on the part of the workers' compensation judge in giving greater weight to this testimony over that of Ms. Jackson.
The employer also references the testimony of Christie Moore, who testified she was working with Bradford on July 29, 2000 and could not recall any incident where Bradford injured herself. The workers' compensation judge specifically discounted Ms. Moore's statements for the following reasons:

*1270 The testimony of Ms. Christie Moore the Court views as somewhat suspect. Her voice was pretty shaky at the trial and as questioning continued she didn't have much memory of anything. And, in fact, she reported that Ms. Bradford said she had a slip and fall while working at Winn Dixie and Wal-Mart. The employer subpoenaed records from Winn Dixie and Wal-Mart and found that Ms. Bradford had never been employed at either place.
After a review of the record, we cannot say the WCJ was clearly wrong in concluding Bradford was temporarily totally disabled through January 15, 2002.
II. Supplemental Earnings Benefits (SEB).
The employer contended the WCJ erred in awarding Bradford SEB from January 15, 2002, until a change in condition occurs. We disagree. Bradford established through her testimony and that of Dr. Rush she was unable to earn 90% of her former wages. The WCJ, thus, did not err in awarding SEB to Bradford until a change is demonstrated.

PENALTIES AND ATTORNEY FEES
The WCJ awarded Bradford penalties in the amount of $2,000 each for the employer's failure to offer vocational rehabilitative services, pay indemnity benefits and pay medical benefits. The judge also awarded Bradford attorney fees of $4,000 for the employer's failure to offer vocational rehabilitation services, $8,000 in attorney fees for its failure to pay indemnity benefits; and $8,000 in attorney fees for its failure to pay medical benefits. We will address each award individually.
I. Failure to Offer Vocational Rehabilitative Services.
The employer argues the WCJ made this award of penalties and attorney fees despite an agreement by the parties that vocational rehabilitation was not an issue in this case. The record sets forth the following exchange:
THE COURT: Okay. And as I have reviewed the file and discussed briefly with both counsel before we beganit appears that the issues in this matter are whether or not Ms. Bradford sustained an accident and an injury in the course and scope of her employment, the extent of her injury and any disabilities she may have, her entitlementI think she was never paid any benefits.
MR. LORIO (Counsel for Employer): Correct.
THE COURT: And her entitlement to indemnity and medical benefits, penalties and attorney's fees. And the claim was filed, you can correct me if I'm incorrect, Mr. Lorio, but as I reviewed thethe file the employer filed stating that there was no accident and/or Ms. Bradford violated Sections 23:1208 and 23:1208.1.
MR. LORIO: Yes, your Honor. And along with that claim, Judge, would be a claim by the employer for a reimbursement of costs and fees incurred to date as allowed by Section 1208.
THE COURT: What about vocational rehabilitation? Is that an issue?
MR. LORIO: There's been no claim no claim for vocational rehabilitation. Judge, I would just also like to note for the record that there has been a lien filed in this case by the Huey P. Long Hospital. And if we could just have a stipulation between counsel that in the event any medical expenses were awarded the workers' compensation lien would be covered.
MR. DALRYMPLE (Counsel for Bradford): Certainly.
*1271 Bradford's counsel clearly did not vocalize a contrary position and did not attempt to advance this issue during trial. Therefore, it was error for the WCJ to award penalties and attorney fees for this failure. We, thus, will amend the judgment to reverse the award of $2,000 in penalties and $4,000 in attorney fees for the employer's failure to provide vocational rehabilitation services.
II. Failure to Pay Disability and Medical Benefits.
The employer argues it reasonably controverted the claim and therefore penalties and attorney fees should not have been awarded. It also argues, if this Court is inclined to affirm the award of penalties and attorney fees, the amount awarded by the WCJ was "outrageous and unsupported by the record evidence."
Penalties and attorney fees do not automatically result from an employer's erroneous failure to pay benefits. Miles v. F.D. Shay Contractor, Inc., 626 So.2d 74 (La.App. 3 Cir.1993). The statutes only authorize such penalties and attorney fees where the employer is arbitrary, capricious, or without probable cause in terminating or refusing to institute compensation benefits. The provisions are penal in nature and must be strictly construed so that employers are not penalized for contesting a close factual question in a workers' compensation proceeding and relying on valid defenses. Miles, 626 So.2d at 78. Nevertheless, in Stegall v. J & J Exterminating, 94 1279 (La.App. 3 Cir. 3/1/95), 651 So.2d 400, 403, we held an employer "may not proceed with an attitude of indifference to the injured worker's situation." An unjustified belief that an injury did not result from an accident does not excuse a failure to pay workers' compensation benefits. Nelson v. Roadway Express, Inc., 588 So.2d 350 (La. 1991). The determination of whether an employee may be awarded penalties and attorney's fees is a question of fact which we will not disturb on appeal absent a finding of manifest error. Fontenot v. J.K. Richard Trucking, 97-220 (La.App. 3 Cir. 6/4/97), 696 So.2d 176.
We note the employer filed its fraud and forfeiture claim against Bradford before any request was made by her for disability benefits or medical expenses. From our review of the entire record, we cannot say that the WCJ manifestly erred in rejecting the employer's contentions and ultimately finding them insufficient to reasonably controvert the employee's subsequent claim for benefits.
The employer also contends the amount awarded for penalties and attorney fees was excessive. We disagree. The penalty amounts are mandated by La.R.S. 23:1201(F); and it was not error for the WCJ to enforce this provision.
An award of attorney fees does not serve the purpose of making the claimant whole, but is intended to punish and deter particularly egregious behavior. Sharbono v. Steve Lang & Son Loggers, 97-110 (La.7/1/97), 696 So.2d 1382. A number of factors are used to determine the amount of attorney fees to be awarded, including the degree of skill and ability exercised, amount of the claim, amount recovered, and the amount of time devoted to the case. Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981). The WCJ made the following comments concerning the amount of work performed by Bradford's counsel:
The efforts of Mr. Dalrymple (Bradford's counsel) are exemplary. There's over three inches of medical evidence and depositions. He had to review, he had to attend the depositions, two depositions of his client, five medical depositions, *1272 review untold hospital records, confer with his client, gather evidence, he wrote a brief on behalf of his client which is a very good brief.
The WCJ has great discretion in awarding penalties and attorney fees, and his decision will not be disturbed unless it is clearly wrong. Dietz v. Guichard Drilling Co., 626 So.2d 79 (La.App. 3 Cir.1993). While the amount of attorney fees awarded may be on the high side, we cannot say it is an abuse of the WCJ's vast discretion. Accordingly, we will not disturb the awards.
Bradford answered the appeal, and requests this court award additional attorney fees for the work performed by her counsel on appeal. An award for attorney fees for work done on appeal is warranted when the appeal has necessitated additional work on the attorney's part. Hickman v. Allstate Timber Co., 94-1275 (La.App. 3 Cir. 4/5/95), 653 So.2d 154, writ denied, 95-1133 (La.6/23/95), 656 So.2d 1017; Aguillard v. Industrial Const. Co., Inc., 542 So.2d 774 (La.App. 3 Cir.1989). Bradford's attorney answered the appeal, prepared an appellate brief, and participated in oral argument. An additional award of $2,500 is reasonable under these circumstances.

MEDICAL EXPENSES
Lastly, the employer contends the WCJ erred in awarding past due medical benefits and making them payable directly to the employee rather than the medical provider. The record revealed Bradford's attorney paid many of her past due medical expenses, which explains why the WCJ made the award payable directly to the employee. The WCJ stated as follows:
The Court awarded the reimbursement of these medical expenses to the claimant's attorney ... The employer in this case has not shown how reimbursement of the medical expenses to Mr. Dalrymple, Ms. Bradford's attorney, amounts for double recovery by the employee. So she is therefore entitled to all of these medical expenses.
The WCJ did not err in awarding the medical expenses directly to the employee.

DECREE
For the foregoing reasons, the portion of the judgment awarding Liddia Bradford $2,000.00 in penalties and $4,000.00 in attorney fees for the failure to provide vocational rehabilitative services is reversed. The judgment is also amended to award the employee $2,500.00 in attorney fees for the services of her counsel on appeal. The judgment is affirmed in all other respects. Costs of this appeal are assessed to the employer, Colonial Nursing Home.
AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.