# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 05-593


THE STANDARD COMPANIES, INC.

VERSUS

KIRK W. TRAHAN


**************
**APPEAL FROM THE**
**OFFICE OF WORKERS' COMPENSATION, DISTRICT 4**
**PARISH OF LAFAYETTE, NO. 03-02662 C/W 03-3171**
**SHARON M. MORROW, WORKERS' COMPENSATION JUDGE**


**************
**SYLVIA R. COOKS**
**JUDGE**
**************


Court composed of Sylvia R. Cooks, Michael G. Sullivan, and James T. Genovese, Judges.


**AFFIRMED AS AMENDED.**


Edward J. Milligan, Jr.
Attorney at Law
P.O. Box 90282
Lafayette, Louisiana 70509
(337) 237-6491
COUNSEL FOR APPELLEE:
    Kirk W. Trahan

Douglas J. Cochran
McKay, Lutgring & Cochran, LLC
732 North Boulevard
Baton Rouge, Louisiana 70802
(225) 389-1060
COUNSEL FOR APPELLANT:
    The Standard Companies, Inc.

**COOKS, J.**

## STATEMENT OF THE FACTS

This is a workers' compensation case. Kirk Trahan was employed by The Standard Companies, Inc. (Standard) as a service coffee representative. He drove a company supply truck, delivering coffee, supplies and equipment to various businesses. The delivery truck was a regular sized van and Mr. Trahan utilized a dolly to unload coffee and other supplies. On July 6, 2001, while taking coffee and materials out of the van, he lost his footing and fell, injuring his back. After the accident, Standard assigned another employee to help Mr. Trahan fulfill his job duties. Despite this, Mr. Trahan stated he was having trouble getting in and out of the van and left his employment. He filed a workers' compensation claim on August 28, 2001. Five months later, in January 2002, Standard re-hired Mr. Trahan. He worked for a week but could not continue because he found the van ride was too painful for him. At the time of the accident, Mr. Trahan was earning weekly wages of $529.98, entitling him to weekly benefits of $353.32. Standard paid benefits to Mr. Trahan beginning August 28, 2001 and continued payment until December 17, 2002. Thereafter, Standard converted to supplemental earnings benefits (SEB) and continued benefits until March 7, 2003. Standard discontinued all benefits after March 7, 2003. The parties stipulated Standard paid a total of $1.413.28 in SEB when the actual benefits should have been $1,531.05. The incorrect amount was paid from December 17, 2003 to March 7, 2003. Additionally, the parties stipulated Standard would be subject to a credit for any amounts paid after March 7, 2003.

On April 11, 2003, Standard filed a disputed claim for compensation alleging fraud. Specifically, Standard contends at the time Mr. Trahan was receiving benefits he was employed as a cashier at his wife's convenience store. Standard also sought

2

reimbursement for SEB paid prior to March 7, 2003. Mr. Trahan filed a petition seeking reinstatement of benefits, vocational rehabilitation, penalties and attorney's fees. Both matters were consolidated before the workers' compensation judge (WCJ). The WCJ found insufficient evidence to prove Mr. Trahan committed fraud, reinstated SEB through March 8, 2003, awarded penalties and attorney's fee for failure to accurately calculate SEB and ordered Standard to pay an additional sum of $117.77 a week until March 7, 2003. The WCJ held Standard was entitled to a credit for any SEB payments made to Mr. Trahan after March 8, 2003 and declined to award penalties and attorney's fees for the termination of benefits, finding Standard was reasonable in questioning Mr. Trahan's entitlement to further benefits. Standard appeals the decision, asserting two assignments of error:

1. The trial court erred in finding Mr. Trahan did not commit fraud under La.R.S. 23:1208.
2. The trial court erred in finding Mr. Trahan was entitled to SEB under La.R.S. 23:1221(3) prior to March 7, 2003.

Mr. Trahan answered the appeal seeking additional attorney's fees for work done on appeal. For the reasons assigned below, we affirm the decision of the workers' compensation judge and award additional attorney's fees.

## STATEMENT OF THE FACTS

*Fraud*

Standard contends Mr. Trahan committed fraud when he denied working at his wife's convenience store. Standard contends videotaped surveillance clearly shows Mr. Trahan as the only person behind the counter, operating the cash register and assisting customers in the store. Louisiana Revised Statute 23:1208 provides, in relevant part:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make

3

a false statement or representation.

. . . .

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In order to prevail, Standard must prove the following: (1) a false statement or representation; (2) willfully made by Mr. Trahan; and (3) made for the purpose of obtaining any workers' compensation benefits or payment. *Thomas v. De St. James,* 02-729 (La.App. 3 Cir. 1/29/03), 846 So.2d 765; *Resweber v. Haroil Construction Company*, 94-2708 (La. 9/5/95), 660 So.2d 7. Standard contends Mr. Trahan testified in his deposition that he never worked at Roland's, his wife's convenience store. Yet, the videotape shows Mr. Trahan standing behind the counter, taking money and assisting patrons of the store. When questioned at trial regarding the videotape, Mr. Trahan explained he was never employed there. He would often go to the store, on the advice of his doctor, to get out of the house, to drink coffee, and to visit with customers. He testified his doctor "said the best thing for me to do is not to stay cooped up in the house, is to stay – you can go stay around the store and meet people." Mrs. Trahan testified neither she nor Mr. Trahan ever took a salary. The store was not making any profit and has subsequently closed. Mrs. Trahan testified Mr. Trahan would often walk to the store to visit and drink coffee. She testified he would sometimes rest on a cot located in the backroom of the store. The WCJ found insufficient evidence of fraud, stating:

[I]t's not enough. It's a very brief video. It's just simply – does it raise questions in my mind? Most definitely. If you had more consistent – over time more– if there was a little bit more, possible. If there was a lot more, definitely. Do I have questions and does it raise suspicions. Definitely. Is it enough to constitute fraud? No, it is not.

We agree with the WCJ that Standard failed to prove Mr. Trahan willfully misrepresented employment at Roland's for the purpose of obtaining benefits. While

4

he may have assisted his wife in the store on occasion, Standard failed to show he was regularly employed there and deliberately misrepresented this fact to his employer.

*SEB*

Standard is seeking reimbursement for SEB paid prior to March 7, 2003. Standard contends Mr. Trahan has not proved by a preponderance of the evidence his inability to earn ninety percent of his pre-employment wages. Louisiana Revised Statutes 23:1221(3) provides supplemental earnings benefits shall be paid:

> (a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two thirds percent of the difference between the average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis.

We disagree with the position of Standard. The medical testimony is consistent. Mr. Trahan suffered a lumbosacral strain superimposed on a L4-5 degenerative disc, arthritis, and obesity. The physicians agreed the degenerative disc disease, the arthritis, and the obesity pre-dated the accident but the injury combined with his weight rendered him unable to work at any employment requiring heavy lifting. His treating orthopedist released him for light duty work only. Mr. Trahan acknowledges his treating physician indicated he can go back to light duty work with restrictions, but he testified he has been unable to find employment. It is undisputed his employer presented him with a list of available positions which were approved by his physician.

The medical testimony supports Mr. Trahan's position. His treating physician, Dr. Charles Olivier, examined Mr. Trahan on July 19, 2001, shortly after the accident.

5

He diagnosed a lumbosacral strain and treated him conservatively with Vioxx, a muscle relaxant and physical therapy. Dr. Olivier continued to treat Mr. Trahan conservatively. In September 2001, he recommended a lumbar epidural steroid injection to relieve the pain and inflammation and ordered an MRI, which indicated a L4-5 degenerative disc. On September 27, 2001, Dr. Olivier reported the epidural helped ease the pain and an exam indicated Mr. Trahan could bend over and touch his toes. He had no spasms and straight leg raising was seventy degrees, which was somewhat improved. At the time, Dr. Olivier noted Mr. Trahan weighed over three hundred forty-four pounds. Dr. Olivier encouraged Mr. Trahan to lose weight and to get another epidural. Dr. Olivier continued to treat Mr. Trahan conservatively and on February 4, 2002, released him for light duty work. A November 6, 2002 exam indicated Mr. Trahan's straight leg raise had gone to seventy-five degrees bilaterally, which Dr. Olivier testified was only slightly below normal for someone his age and weight. The last time Dr. Olivier examined Mr. Trahan was February 11, 2004. At that time, his straight leg raising was seventy degrees bilaterally.

Dr. Thad Broussard, an independent medical examiner, saw Mr. Trahan only once, on April 23, 2002. At that time, Dr. Broussard noted Mr. Trahan had generalized tenderness around the lumbar spine and was limited on both flexion and extension. But he "did not have spasm on right and left bending, either, and exam of lower extremities did not reveal motor point tenderness, weakness or sensory loss. His deep tendon reflexes were 1 to 2 plus. That is essentially objectively normal and bilateral." Dr. Broussard testified Mr. Trahan's "image studies, which are objective by definition, did show, I felt some changes, according to my notes, in the disc degenerative in nature, most prominently at the L4-5 level. But I explained to the patient, and I put this in the exam, that I was in agreement with the treatment that had

6

been offered to the patient up to that time." Further, Dr. Broussard testified: "I did not believe, based on my exam and review of the materials forwarded to me, that he was a surgical candidate. I did believe that he had some abilities to return to some type of gainful and functioning employment, but I felt that should best be measured through a functional capacity evaluation." Dr. Broussard testified Mr. Trahan's obesity combined with his poor overall physical condition made recovery slower and more difficult.

Dr. Joe Morgan, Standard's orthopedic surgeon, examined Mr. Trahan on October 10, 2001. He found Mr. Trahan was able to flex his lumbar spine, his fingers reached below the knee, which indicated Mr. Trahan did not have back spasms. He was able to recover to an upright position after bending over without difficulty. His bending and his rotation were pain free and he could stand on toes and heels alone. Dr. Morgan testified "[s]traight leg raising was complete to 80 degrees in the sitting position. That's a normal finding." Dr. Morgan agreed the disc degeneration at L4-5 predated the accident and he concurred with the diagnosis of a lumbar strain superimposed on preexisting arthritis and disc disease. Dr. Morgan testified: "I thought when I saw him he had made a pretty good recovery. I couldn't really find anything on physical examination that was abnormal, so I think he had the strained muscles and he had the preexisting problem and I thought he probably had returned to baseline by the time that I saw him." Again, Dr. Morgan testified individuals "who have that picture in their back and they are the size that he is, I would think that they would probably have pain from time to time. . . As far as treatment goes, treatment for this accident, he didn't need any more treatment for this accident. For his underlying problem he may need treatment for that."

In order to recover SEB, an employee bears the burden of proving by a

7

preponderance of the evidence he is not able to earn ninety percent of his pre-injury wages. *Smith v. Louisiana Department of Corrections*, 03-1305 (La. 2/28/94), 633 So.2d 129. If the employee meets the requisite burden of proof, the burden then shifts to the employer, who must prove that the employee is physically capable of performing a certain job, that the job was available or was offered to the employee. *Allen v. City of Shreveport*, 618 So.2d 386 (La.1993). The parties stipulated Mr. Trahan is not entitled to SEB after March 7, 2003. The only issue remaining is whether Mr. Trahan has proven his entitlement to SEB prior to this date. We find that he has. The medical testimony is unequivocal. Mr. Trahan suffered a lumbosacral strain. This injury, coupled with pre-existing disc disease, arthritis and obesity, rendered him unable to work at his previous employment which entailed heavy lifting and carrying. He was released for light duty work only. We agree with the decision of the WCJ.

*Attorney's Fees for Work Done on Appeal*

Mr. Trahan's attorney requests additional attorney's fees for work done on appeal. An award for attorney's fees for work done on appeal is warranted when the appeal has necessitated additional work on the attorney's part. *Colonial Nursing Home v. Bradford,* 02-588 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, *writ denied*, 03-364 (La. 4/21/03), 841 So.2d 802. We find an additional award of $1,000.00 is appropriate.

**DECREE**

Based on the foregoing review of the evidence, we affirm and amend the decision of the workers' compensation judge. All costs of this appeal are assessed to The Standard Companies, Inc.

**AFFIRMED AS AMENDED.**