STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
CA 23-578-WCA

GAYNELL FINISTER

VERSUS

GOLDEN NUGGET LAKE CHARLES, LLC

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 03
PARISH OF CALCASIEU, DOCKET 20-04616
HONORABLE MELISSA ST. MARY, WORKERS' COMPENSATION JUDGE

**********

LEDRICKA J. THIERRY
JUDGE

**********

Court composed of Shannon J. Gremillion, Jonathan W. Perry and Ledricka J. Thierry, Judges.

AFFIRMED AS AMENDED.

Jason E. Wilson
Hayden D. Presley
Galloway, Johnson, Tompkins, Burr & Smith
3861 Ambassador Caffery Pkwy., Ste. 300
Lafayette, LA 70503
(337) 735-1760
COUNSEL FOR DEFENDANT/APPELLANT
    Golden Nugget Lake Charles, LLC

Marcus M. Zimmerman
949 Ryan St., Ste. 110
Lake Charles, LA 70601
(337) 474-1644
COUNSEL FOR PLAINTIFF/APPELLEE
    Gaynell Finister

**THIERRY, Judge.**

An employer appeals a judgment rendered by the Office of Workers' Compensation ("OWC") in favor of the Claimant, the injured employee. The Claimant answered the appeal requesting additional attorney's fees. For the reasons that follow, we affirm as amended, reducing the past indemnity benefits award from $94,640.00 to $58,240.00, and awarding an additional $5,000.00 in attorney's fees to Claimant.

## FACTS AND PROCEDURAL HISTORY

In 2014, Gaynell Finister ("Ms. Finister") was hired as an environmental services ("EVS") supervisor at the Golden Nugget in Lake Charles, Louisiana ("GNLC"). An EVS supervisor's job duties included maintaining the cleanliness of the facilities and hiring, firing, and scheduling employees. Physically, an EVS supervisor could be expected to sweep, mop, clean, and replenish bathroom supplies, especially when work was busy.

On November 17, 2018, Ms. Finister sustained a shoulder injury at work while attempting to break up an altercation between two other employees. GNLC paid her benefits for that injury. She underwent a rotator cuff repair surgery on May 3, 2019, with Dr. Brett Cascio ("Dr. Cascio") and was placed on no work status until October 22, 2019, at which point Dr. Cascio released her to light duty work with restrictions of "[n]o lifting, pushing, pulling, climbing until further notice." She returned to work at GNLC on November 8, 2019.

On November 16, 2019, just eight days after returning to work, Ms. Finister sustained a second shoulder injury when reaching to grab her radio. GNLC accepted her injury as compensable. Dr. Cascio placed Ms. Finister on no work status until

February 27, 2020, when he released her to light duty. On March 5, 2020, GNLC reoffered her a job as EVS supervisor.

The EVS supervisor position mentioned in the March 5, 2020 offer was for the graveyard shift, from approximately 2:00 pm to 11:00 pm, as opposed to her usual swing shift, from approximately 11:00 pm to 7:30 am. Ms. Finister did not accept the position, which GNLC assumed to be a voluntary resignation. GNLC thereby suspended her workers' compensation indemnity benefits. In response, Ms. Finister filed a claim against GNLC, alleging entitlement to indemnity benefits and requesting penalties and attorney's fees.

The trial on this matter was held on March 23, 2023. In a judgment signed on June 8, 2023, the Workers' Compensation Judge ("WCJ") rendered judgment in favor of Ms. Finister. In her written reasons, the WCJ held that "the Environmental Services Supervisor position offered to Claimant on March 5, 2020 by Defendant was not a suitable or modified position that Claimant could perform within the restrictions placed upon her by her treating physician." The WCJ further stated, in part:

> When Claimant was offered to return to work on the graveyard shift in the same EVS capacity as she had done two (2) prior times at this point, Claimant had no reasonable basis for believing that the graveyard EVS position would be any different than the swing shift EVS position, and rightfully so – they are the same exact positions irrespective of whether one shift is busier than the other at any given time. Moreover, there was nothing in the March 5, 2020 offer letter suggesting that what she was being offered was any different than what she had done the past two (2) times she was released to return to work. It is not enough to acknowledge a restriction and bring an employee back in the same capacity with the caveat "just stay within your restrictions", and refer to it as a modified position. Defendant knew Claimant worked beyond her restrictions when she returned after Injury #1. Because of the nature of the job coupled with the "all hands on deck when necessary" culture, absent an affirmative accommodation in the form of a legitimately modified position, Claimant was at risk of re-injury each time she

returned to the EVS position. Therefore, Claimant was not obligated to accept the EVS position a third time, and her refusal to accept the same position was not a voluntary withdrawal from the workforce.

It is this ruling GNLC now appeals. Ms. Finister answered the appeal, asking that she be awarded additional attorney's fees for the appeal.

**ASSIGNMENTS OF ERROR**

1. The WCJ was manifestly erroneous in her conclusion that GNLC's job offer of March 5, 2020 was unsuitable such that it was required to continue to pay indemnity to Ms. Finister.

2. The WCJ was manifestly erroneous[ ] in concluding that GNLC's handling of this claim was arbitrary and capricious such that penalties and attorney fees were owed.

3. The WCJ committed legal error in concluding that Ms. Finister had not retired and thus her entitled to supplemental earnings benefits (SEB) was not capped as of 104 weeks.

**ANALYSIS**

Standard of Review

Factual findings in workers' compensation cases are analyzed on appeal under the manifest error standard of review. *Timberlake v. Christus Health Cent. La*, 13-166 (La.App. 3 Cir. 10/30/13), 124 So.3d 1201. In applying this standard, "the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784. As this court has previously explained:

> Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would

3

have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Id.* (internal citation omitted).

Assignment of Error Number One

It is well established that an employee is entitled to receive supplemental earnings benefits ("SEB") if she sustains a work-related injury that causes an inability to earn at least ninety percent or more of her pre-injury wage. La.R.S. 23:1221(3)(a)(i); *see also Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. The employee bears the initial burden of proof to show that the injury resulted in an inability to earn that amount. Once this burden is met, the burden shifts to the employer who must prove that the employee is physically able to perform a certain job and that such a job was offered to the employee or available to the employee in her or the employer's reasonable geographic location. La.R.S. 23:1221(3)(c)(i); *Banks*, 696 So.2d 551. Importantly, "workers' compensation is to be liberally construed in favor of coverage." *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1007 (La.1989).

In this case, neither party disputes that Ms. Finister sustained work-related injuries on November 17, 2018 and again on November 16, 2019. Neither disputes that Ms. Finister was entitled to benefits following those injuries. Rather, the issue raised in this assignment of error is whether GNLC's March 5, 2020 job offer was a suitable one that accommodated her restrictions, and whether her refusal to accept constituted a voluntary withdrawal from the workforce. The employer, GNLC, bears the burden of proof pursuant to La.R.S. 23:1221(3)(c)(i).

The March 5, 2020 offer letter at issue stated:

> Dear Ms. Finister,

4

Golden Nugget Lake Charles (GNLC) is in receipt of a doctor's note from Dr. Cascio, indicating that you are able to return to light duty work effective February 27, 2020. The doctor's note indicates that you are cleared to return to light duty work with the restriction of ***no use of left arm***. A copy of the doctor's note is attached for your review.

Please be advised that GNLC has a light duty position for you with EVS at Golden Nugget Lake Charles, 2550 Golden Nugget Blvd, Lake Charles, LA 70601. GNLC will pay your normal wage for the above mentioned light duty position. The physical requirements of your duties will include, but are not limited to, walking.

If you are unable to report to work due to illness or injury, you should notify your supervisor before the start of your next workday, if possible. Your supervisor must also be contacted on each additional day of absence. You are also required to attend all follow up doctors' appointments. If you are unable to attend, you must call to reschedule your appointment as soon as possible.

GNLC recognizes, is aware of, and will abide by the physical limitations by which Dr. Cascio has authorized you to return to work. Your job will not exceed the physical limitations as outlined by Dr. Cascio on the report. GNLC will only assign tasks consistent with your listed physical abilities, knowledge, and skills and will provide training if necessary for the light duty position referenced herein.

Please contact Justin Yelverton, Risk Manager, at (337) 508-7917 upon receipt of this bona fide offer of employment to confirm your return to work in the capacity described above. Failure to respond to this offer will indicate that you have declined this offer and wish to voluntarily terminate your employment with GNLC.

Sincerely,

Justin P. Yelverton

Risk Manager

This offer letter appears at first glance to be accommodating of Ms. Finister's work restrictions and injuries. Yet, Ms. Finister testified at trial that the very nature of being an EVS supervisor, particularly on the graveyard shift, was physical and would require her to work beyond her restrictions.

Ms. Finister further testified that she had to "take up the slack" when the staff was shorthanded or an employee was on a break. She explained, "You cannot leave anything messy for the patrons to see, picking up casino glasses, clearing out ashtrays, stocking the restrooms, yes." Even though the written job description of EVS supervisor did not explicitly state that she was required to assist the staff, she testified that her understanding and experience of the EVS position—a position she held for several years prior to her injuries and thus was intimately familiar with— was that she was supposed to assist staff when the job required it.

As one example, upon returning to work after her first shoulder injury, Ms. Finister testified that she had to work beyond her restrictions. She explained: "When it's in the restrooms, when you see tissue on the floor or need to be restocked or water all on the mirrors, you have to jump in and clean it, especially if the lady is on break or either she is tending the other part of the restroom." She further testified that she was working beyond her work restrictions at the time she re-injured her right shoulder.

In regard to the March 5, 2020 offer of employment, although Ms. Finister agreed on cross examination that she had no knowledge about the physical requirements of the EVS supervisor graveyard position, she also testified that the graveyard shift consisted of more work than the swing shift position she had previously held. According to Ms. Finister, "the graveyard shift was the shift that came and cleaned grounds at night when it's not busy, cleaned the whole entire spa area, cleaned restrooms, restaurant, such as shampooing some carpet in certain areas and getting it all cleaned up for the morning shift."

After a review of the record, we find that it was not manifestly erroneous for the WCJ to find the March 5, 2020 offered position to be unsuitable employment for

6

Ms. Finister, and that GNLC therefore failed to meet its burden under La.R.S. 23:1221(3)(c)(i) of proving that Ms. Finister was physically able to perform the EVS supervisor graveyard position. Although GNLC put forth evidence to challenge Ms. Finister's testimony, we are not permitted to weigh the evidence under the manifest error of review. We find that the WCJ was reasonable in concluding that it was "not enough [for GNLC] to acknowledge a restriction and bring an employee back in the same capacity with the caveat just stay within your restrictions, and refer to it as a modified position." Therefore, this assignment of error is without merit.

Assignment of Error Number Two

In its second assignment of error, GNLC claims that the WCJ was manifestly erroneous in finding GNLC's handling of this claim to be arbitrary and capricious and subsequently awarding penalties and attorney's fees. The WCJ in this case awarded attorney's fees of $15,000.00 and penalties of $8,000.00. Ms. Finister opposes this assignment of error and further asserts that she is entitled to additional attorney's fees for this appeal.

As we stated in *Colonial Nursing Home v. Bradford*, 02-588, p. 11 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, 1271, *writ denied,* 03-364 (La. 4/21/03), 841 So.2d 802 (internal citations omitted):

> Penalties and attorney fees do not automatically result from an employer's erroneous failure to pay benefits. The statutes only authorize such penalties and attorney fees where the employer is arbitrary, capricious, or without probable cause in terminating or refusing to institute compensation benefits. The provisions are penal in nature and must be strictly construed so that employers are not penalized for contesting a close factual question in a workers' compensation proceeding and relying on valid defenses. Nevertheless, in *Stegall v. J & J Exterminating,* 94 1279 (La.App. 3 Cir. 3/1/95), 651 So.2d 400, 403, we held an employer "may not proceed with an attitude of indifference to the injured worker's situation." An unjustified belief that an injury did not result from an accident does not excuse a failure to pay workers' compensation benefits. The determination of whether an

employee may be awarded penalties and attorney's fees is a question of fact which we will not disturb on appeal absent a finding of manifest error.

Here, GNLC assigned Ms. Finister to the same position in which she previously sustained two injuries. Although GNLC argues that the new job offer was different, in that it did not require her to break her restrictions, the trial testimony revealed that the very nature of an EVS supervisor requires physical work. The fact that Ms. Finister sustained a second injury just eight days after returning to work following her first injury in the EVS supervisor position indicates that the March 5, 2020 offer was not suitable employment. Therefore, we cannot say that it was manifestly erroneous for the WCJ to find that GNLC arbitrarily and capriciously handled Ms. Finister's claim and to award penalties and attorney's fees.

As to Ms. Finister's request for additional attorney's fees for work associated with this appeal, we have previously held that "a workers' compensation claimant who is successful in defending an appeal may be entitled to an award of additional attorney fees." *McCain v. Motel 6*, 19-653, p. 11 (La.App. 3 Cir. 3/4/20), 297 So.3d 136, 143, *writ denied*, 20-764 (La. 10/6/20), 302 So.3d 535; *see also Ryan v. Cajun Indus., L.L.C.*, 20-617 (La.App. 3 Cir. 11/3/21), 330 So.3d 324; *Colonial Nursing Home v. Bradford*, 834 So.2d 1262. Ms. Finister's attorney prepared an answer to the appeal, prepared an appellate brief, and participated in oral argument. We find that an award of $5,000.00 to Ms. Finister is reasonable under these circumstances.

Assignment of Error Number Three

In its final assignment of error, GNLC alleges that the WCJ erred by failing to find that Ms. Finister did not retire and by awarding her past and future indemnity benefits in excess of 104 weeks. When a claimant retires, her supplemental earnings benefits ("SEB") are capped at 104 weeks, rather than 520 weeks. La.R.S.

8

23:1221(3)(d)(iii) ("When the employee retires; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.").

In *Breaux v. City of New Orleans*, 97-273, pp. 6-7 (La.App. 4 Cir. 8/27/97), 699 So.2d 482, 486, *writ denied*, 97-2491 (La. 12/19/97), 706 So.2d 454 (internal citations omitted), the court explained how to determine whether retirement in the context of SEB occurs:

> "Retirement" occurs for purposes of SEB entitlement when the worker either "withdraws from the work force" or draws old age social security benefits, whichever comes first. Determination of whether an employee has "withdrawn from the work force" for purposes of SEB is based on many factors, including age; the circumstances of each case control. Generally, an employee who elects retirement benefits in lieu of returning to work is considered to have retired. This rule also applies if the employee states his intention to not look for another job despite his doctor's opinion he could return to sedentary work.
>
> On the other hand, unemployment caused solely by employment injury is not considered "retirement" for purposes of terminating SEB. The "retirement" which restricts SEB payments is that based on age or years of service resulting in some type of pension. The term "retirement" connotes "total and permanent withdrawal from the work force." Significantly, in *Mason,* 662 So.2d 843, the court found that the worker had retired for purposes of SEB when he wrote a letter to his employer stating that he was retiring, told his physician he had retired, wrote "retired" in the space for employer on his health insurance form, moved back home in a rural area, did not seek employment, and openly conducted himself as a retiree.

Stated another way, retirement under La.R.S. 23:1221(3)(d)(iii) "refers only to a worker who has no intention of returning to work regardless of a disability." *Kinchen v. City of Shreveport*, 46,490, p. 10 (La.App. 2 Cir. 9/21/11), 73 So.3d 1011, 1018, *writ granted*, 11-2262 (La. 12/2/11), 76 So.3d 1161. When an employee expresses an intention to stop working and not search for other employment, and who makes no effort to search for another job, that employee is retired for purposes of La.R.S. 23:1221(3)(d)(iii). *Id.*

9

Ms. Finister's counsel argues in the appellate brief that Ms. Finister was not permanently withdrawn from the workforce. At trial, Ms. Finister testified that she "would take" a "perfect job" if offered one that accounted for her disabilities.

Yet, on cross examination, Ms. Finister admitted that she has not looked for any work since Dr. Cascio released her to light duty:

Q. Ms. Finister, the last day you worked was – or the last – well, the last day you looked for employment or [were] involved in that was on March 6th, [2020,] correct? You haven't looked for any employment –

A. Correct.

Q. – since then? Yes?

A. Yes.

Q. And you haven't looked for work even that would be within your light duty restrictions, isn't that right?

A. That's right.

Q. So Dr. Cascio released you to light duty, which means that Dr. Cascio, your choice of physician, said that you could work, but you haven't – you haven't actually looked for any work even though it's been the case; isn't that right?

A. Right.

During her deposition, Ms. Finister also admitted she had not searched for any jobs within her restrictions:

Q. So, you know, as we sit here today, is there any type of work that you think you'd be able to do right now that would fit these light-duty restrictions?

A. It would probably be secretary, like answering the phones, something like that.

Q. Have you looked for any jobs like that?

A. No.

Furthermore, Ms. Finister evidenced an intent to retire, as she admitted at trial that she told Dr. Cascio she had retired. The medical records corroborate her testimony, as Dr. Cascio states in a medical record dated March 30, 2021, that "[s]he [Ms. Finister] is currently retired." In addition, according to the trial testimony of Shane Erwin, a nurse case manager who helped handle the medical aspect of Ms. Finister's workers' compensation case, Ms. Finister verbally stated that she was retired. In Mr. Erwin's closure report on Ms. Finister, Mr. Erwin stated that the "[i]njured worker has been placed in non-surgical MMI and has retired from her job."

Under La.R.S. 23:1221(3) and the jurisprudence's interpretation of "retirement," we find that Ms. Finister is retired. She expressed an intention not to return to the workforce when she told Dr. Cascio and Mr. Erwin she was retired. Although she said she would take a job, if offered one within her restrictions, she admitted she never searched for other employment. Simply put, she made no effort to return to the workforce, and the record is absent of any evidence to the contrary.

Therefore, we find that Ms. Finister is retired pursuant to La.R.S. 23:1221(3)(d)(iii), and as such the WCJ manifestly erred by not capping her SEB at 104 weeks. We accordingly amend the WCJ's June 8, 2023 judgment to reflect the retirement cap of 104 weeks. The compensation rate used in the WCJ's judgment and stipulated to by the parties is $560.00. When the compensation rate of $560.00 is multiplied by the retirement cap of 104 weeks, encompassing a period of approximately two years from March 6, 2020 through March 6, 2022, the total amount of indemnity benefits owed to Ms. Finister is $58,240.00 ($560.00 x 104 = $58,240.00). We thereby reduce the past indemnity benefits award of $94,640.00 to $58,240.00, with no future benefits owed.

11

To be clear, the portion of the WCJ's June 8, 2023 judgment which we amend is:

> Calculation of Claimant's indemnity benefits is based on the stipulated average weekly wage rate of $840.00 with a corresponding comp rate of $560.00. Claimant is entitled to past indemnity benefits in the amount of $94,640.00, which amount is for the period of March 6, 2020 through June 2, 2023. Thereafter benefits are owed until such time that it can be reduced or terminated in accordance with Louisiana Workers' Compensation Law.

We amend the above-quoted portion of the judgment to the following:

> Calculation of Claimant's indemnity benefits is based on the stipulated average weekly wage rate of $840.00 with a corresponding comp rate of $560.00. Claimant's indemnity benefits are capped at 104 weeks pursuant to La.R.S. 23:1221(3)(d)(iii). Claimant is entitled to past indemnity benefits in the amount of $58,240.00, which amount is for the approximate period of March 6, 2020 through March 6, 2022 and is calculated by multiplying the comp rate of $560.00 by 104.

**DECREE**

For the foregoing reasons, we affirm the findings of the WCJ, as amended above to reduce Gaynell Finister's award of indemnity benefits from $94,640.00 to $58,240.00. We award the amount of $5,000.00 to Ms. Finister for additional attorney's fees on appeal. Costs of this appeal are assessed against appellant, Golden Nugget Lake Charles, LLC.

**AFFIRMED AS AMENDED.**